Doris CABANA, Viola Jerrel, and Nancy Hillstrand, Appellants,

v.

KENAI PENINSULA BOROUGH, Appellee.

No. S–9994.

Supreme Court of Alaska.

July 12, 2002.

See also 21 P.3d 833.

Robert C. Erwin and Roberta C. Erwin, Erwin & Erwin, LLC, Anchorage, for Appellants.

Holly B. Montague, Assistant Borough Attorney, Soldotna, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I.  INTRODUCTION

The Kenai Peninsula Borough (KPB) Assembly passed an ordinance in March 1999, exchanging forty acres of borough property near Homer (the Homer parcel) for twenty acres of property near Anchor Point owned by Clifford Shafer (the Shafer parcel).  The Borough had appraised the Shafer parcel at $24,500 and the Homer parcel at $33,700.  The same day that it passed the exchange ordinance, the KPB Assembly passed a resolution to classify the Homer parcel as light industrial with a variance for stockpiling material and the operation of heavy equipment and with restrictions on the use and development of the property.  Doris Cabana, Viola Jerrel, and Nancy Hillstrand are taxpayers of the Kenai Peninsula Borough who live within one mile of the Homer parcel.  They filed suit in superior court, seeking an order determining that the KPB Assembly's classification resolution was an improper exercise

of zoning power and declaring void the ordinance authorizing the exchange. The superior court granted KPB's cross-motion for summary judgment, and Cabana appeals that decision. We affirm because there is no genuine issue of material fact regarding KPB's appraisal procedures. KPB is therefore entitled to judgment as a matter of law.

## II. FACTS AND PROCEEDINGS

### A. Factual History

Clifford and Cheryl Shafer owned a twenty-acre parcel of land in Anchor Point. Approximately one-half of the Shafer parcel is wetlands, and sixty-four of 105 parcels within a half-mile radius of the parcel are developed residentially. Neighbors of the Shafer parcel opposed Shafer's two applications to operate a material site [1] for gravel extraction. The first application was denied and, after Shafer applied the second time, the Coastal Consistency Commission began reviewing the impact of a material site on the wetlands. Facing continuing opposition by neighbors and potentially prohibitive expense as a result of the review process, Shafer approached KPB with an offer to exchange his parcel for the Homer parcel owned by KPB.

Unlike the Shafer parcel, the forty-acre Homer parcel shares its borders primarily with industrial sites, including an asphalt plant, the borough landfill, and a State Department of Transportation maintenance yard. One-third of the Homer parcel has been identified as wetlands. Just as neighbors had opposed Shafer's application for a material site permit, several neighbors of the Homer parcel, including the plaintiffs, vociferously opposed the land exchange.

As part of a 1999 reappraisal of all land in the Homer/Anchor Point area, KPB Land Appraiser Louise Paul appraised the two parcels of land in January 1999. Paul appraised the Shafer parcel at $24,500 and the Homer parcel at $33,700. In reviewing the appraisals in February 1999 Paul reaffirmed those valuations. Her supervisor, Appraisal Manager Gary Fandel, noted that the Homer parcel may "have greater future potential due to commercial and light industrial development occurring in the vicinity."

On June 1, 1999, the KPB Assembly held a public hearing on Ordinance 99–17 and its companion Resolution 99–050, which proposed classifying the Homer parcel as light industrial with an allowance for stockpiling and operation of heavy equipment.[2] The three plaintiffs again commented on the proposed classification. At the conclusion of the hearing, the KPB Assembly adopted the resolution. Also on June 1, 1999, the KPB Assembly approved Ordinance 99–17, which set out findings regarding the benefits of the land exchange, authorized the exchange, and imposed deed restrictions to preserve the recreational use of land bordering the Homer parcel and to protect the wetlands and streams. The ordinance ordered: "The borough land will be classified in accordance with KPB 17.10 prior to the exchange, *provided that this land may be used for material stockpiling and related activities including sorting and the operation of heavy equipment.*" (Emphasis in original.) The ordinance noted that "the proposed exchange is of almost equal value, excluding the value of gravel resources on the Shafer parcel."

1. Under KPB Ordinance 96–14, a material site is defined as an area used for extracting, quarrying, stockpiling, or conditioning gravel, sand, rock, peat, pumice, pumicite, cinders, clay sod, topsoil, or other similar resources.

2. In the two weeks before Ordinance 99–17 was introduced, the Kachemak Bay Advisory Planning Commission (KBAPC) and the KPB Planning Commission each held a public meeting regarding the classification of the Homer parcel. The three plaintiffs and other members of the public voiced their concerns regarding the development of the wetlands, wildlife protection, noise, water contamination, and fears that the entire area will become industrial. The KBAPC passed a motion to support Ordinance 99–17 with the proviso that the parcel be classified light industrial with a variance to accommodate gravel storage, that a 100-foot buffer be maintained, and that the wetlands not be filled, dredged, or developed except for road access. The KBAPC noted that "the Light Industrial classification reflects the wishes of the public." The KPB Planning Commission approved the proposal to recommend to the KPB Assembly the light industrial classification with a variance, which led to the Assembly's passage of Resolution 99–050 and Ordinance 99–17.

## B. Procedural History

In July 1999 Cabana, Jerrel, and Hillstrand (Cabana) filed this suit challenging the classification and land exchange.[3] Cabana moved for summary judgment in May 2000, claiming that the Homer parcel was not exchanged at fair market value in violation of the KPB Code based on three arguments: "(1) the land was not appraised at fair market value; (2) the exchange itself on the new appraised value for 1999 was not an exchange for fair market value; and (3) Louise Paul was not a qualified appraiser for 1999, under Kenai Peninsula Borough Ordinances, to determine fair market value." KPB opposed the motion for summary judgment and filed a cross-motion for summary judgment. The superior court denied Cabana's motion and granted KPB's cross-motion for summary judgment. Cabana appeals the summary judgment order in favor of KPB.

## III. STANDARD OF REVIEW

We review a grant or denial of summary judgment de novo.[4] Summary judgment is appropriate if no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.[5] When ruling on a motion for summary judgment, we "may consider any argument ascertainable from the record, even if the superior court did not rule on it." [6] "We are not bound by the reasoning articulated by the superior court and can affirm a grant of summary judgment on alternative grounds, including grounds not advanced by the superior court or the parties." [7] The nonmoving party is the non-prevailing party on a summary judgment motion. Because Cabana appeals the grant of KPB's cross-motion for summary judgment, Cabana is the nonmoving, losing party with regard to that motion. As such, facts are to be viewed in the light most favorable to Cabana, and reasonable inferences are to be resolved in Cabana's favor.[8]

Summary judgment is inappropriate when the affidavits and other evidence before the trial court establish that a genuine issue of material fact exists.[9] The court does not weigh the evidence or witness credibility on summary judgment.[10] "A court must deny a motion for summary judgment if there is contradictory evidence, or the movant's evidence is impeached on material matters, because in such cases an issue of credibility exists." [11]

## IV. DISCUSSION

The issue before us on appeal is whether the trial court erred in granting KPB's motion for summary judgment on Cabana's claimed violations of substantive due process

---

3. Prior to filing this suit, the plaintiffs raised the same issues in an administrative appeal to the superior court challenging the classification (Resolution 99–050) and the land exchange (Ordinance 99–17). In September 1999 the superior court dismissed the appeal as an inappropriate appellate challenge of legislative action. The plaintiffs appealed and we affirmed, but specifically permitted Cabana to obtain review of KPB's classification decision through this action. *Cabana v. Kenai Peninsula Borough*, 21 P.3d 833, 836 n. 12, 838 (Alaska 2001).

4. *United Airlines, Inc. v. Good Taste, Inc.*, 982 P.2d 1259, 1262 (Alaska 1999); *Jackinsky v. Jackinsky*, 894 P.2d 650, 654 (Alaska 1995).

5. Alaska R. Civ. P. 56(c); *accord Jackinsky*, 894 P.2d at 654.

6. *Jackinsky*, 894 P.2d at 654.

7. *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 351 (Alaska 2001).

8. *See Thoma v. Hickel*, 947 P.2d 816, 818 (Alaska 1997); *see also Chilton–Wren v. Olds*, 1 P.3d 693, 696 (Alaska 2000); *Ellis v. City of Valdez*, 686 P.2d 700, 702 (Alaska 1984). The fact that the issue of fair market value is essential to the resolution of both parties' motions for summary judgment does not alter our obligation to draw all inferences of fact relevant to the cross-claim for summary judgment, including the fair market value issue, in favor of Cabana.

9. *Peterson v. Wirum*, 625 P.2d 866, 869–70 (Alaska 1981).

10. *Meyer v. State, Dep't of Revenue, Child Support Enforcement Div. ex rel. N.G.T.*, 994 P.2d 365, 367 (Alaska 1999).

11. *Bauman v. Day*, 892 P.2d 817, 826 (Alaska 1995).

and the KPB Code.[12] KPB and Cabana have differing views regarding the value of the Homer parcel.[13] But this factual dispute is immaterial to our conclusion that KPB did not abuse its discretion in authorizing the land exchange, that it complied with the statutory procedural requirements, and that it did not violate Cabana's right to substantive due process. We conclude that the trial court properly granted summary judgment in favor of KPB because, even assuming the facts alleged by Cabana, the nonmoving party, Cabana does not have a valid legal claim against KPB.[14]

### A. KPB Did Not Violate the KPB Code by Approving the Land Exchange.

#### 1. Kenai Peninsula Borough Code § 17.10.100(C) governs this land exchange.

All municipalities have the power to acquire and dispose of real property.[15] Alaska Statute 29.35.090(a) provides that "[t]he governing body shall by ordinance establish a formal procedure for acquisition and disposal of land and interests in land by the municipality." The formal procedures governing land in the Kenai Peninsula Borough can be found in Kenai Peninsula Borough Code (KPBC) §§ 17.10.090 and 17.10.100(C). Kenai Peninsula Borough Code § 17.10.090 relates to land that is "sold, leased, or otherwise disposed of" and provides that "[a]lll lands shall be sold or leased at fair market value or fair market rental value as determined by a qualified appraiser except as provided in sections 17.10.100(I) and 17.10.120(D)." Kenai Peninsula Borough Code § 17.10.100(C) governs exchange sales:

> The assembly may by ordinance authorize the exchange of land but only if the ordinance authorizing the exchange sale contains a finding that the exchange sale is in the best interests of the borough and a statement of the facts on which the finding is based.

Cabana argues that KPB violated KPBC § 17.10.090 by exchanging properties that were not of equal market value.

But we conclude that KPBC § 17.10.100(C), rather than KPBC § 17.10.090, applies to this case. First, nothing in the KPB Code clearly requires that land exchanges comply with sections other than 17.10.100(C), which specifically addresses land exchange sales. The plain language of the code requires sales of borough land to be at fair market value, but it does not expressly require exchanges of borough land to be at fair market value. Second, Ordinance 99–17 clearly states that "[t]he mayor is authorized, pursuant to KPB 17.10.100(C) to exchange the land." Because it makes no mention of KPBC § 17.10.090,[16] it appears that the KPB Assembly only contemplated that KPBC § 17.10.100(C) would apply to this transaction.

---

12. Cabana's complaint does not list causes of action separately. The superior court correctly interpreted the plaintiffs' complaint as alleging a violation of substantive due process, a violation of the KPB Code, and improper zoning. Cabana now concedes that the classification was not an exercise of zoning power and so we need not reach that issue.

13. Ron Johnson submitted an expert affidavit that the Homer parcel has a value of $56,000 to $64,000, which conflicts with KPB's appraisal of $24,500. In addition, the Homer parcel was valuated at $79,200 for every year from 1994 to 1998. But in 1999 Louise Paul appraised the Homer parcel at $33,700.

14. *Cf. Whaley v. State,* 438 P.2d 718, 720 (Alaska 1968) (holding that a factual question is considered material and thereby prevents the entry of summary judgment if, as a matter of law, the appellant would then have a basis for a claim).

15. AS 29.35.010(8).

16. In a memorandum to the mayor recommending the land exchange, Planning Director Lisa Parker wrote:

> Rationale
> 17.10.090 states, *"The assembly may by ordinance authorize the exchange of land but only if the ordinance authorizing the exchange sale contains a finding that the exchange sale is in the best interests of the borough and a statement of the facts on which the finding is based."*
>
> Parker quotes the "best interests" language of KPBC § 17.10.100(C), but asserts that it is from KPBC § 17.10.090. Her intention to apply KPBC § 17.10.100(C) is subsequently made clear in an almost identical memorandum to the mayor in which she correctly cites that section.

Third, it appears that the KPB Assembly roughly modeled its procedure for exchanging borough land after the State of Alaska's procedure for exchanging state land. Alaska Statute 29.65.090, which governs land exchanges, provides:

The director and a municipality are authorized to exchange land or interests in land when it is in the public interest. Land or interests in land exchanged under this section must be of approximately equal value, including the nonmonetary value of public benefits.

Alaska Statute 38.50.020(a) provides:

If the director determines that the property to be exchanged is not equal in appraised fair market value or if the value cannot be ascertained with reasonable certainty, the director may enter into an exchange on a finding that the appraised fair market value of the property to be received, together with the value of other public benefits, equals or exceeds the value of the property which the state will relinquish.

These statutes parallel the language of KPBC § 17.10.100(C), which is quoted above, and KPBC § 17.10.120(D), which provides:

The assembly may authorize the sale of land for an amount other than fair market value only if the ordinance authorizing the sale contains: (1) A finding that the sale for an amount other than the fair market value is in the best public interest; (2) A statement of the facts on which the finding is based; and (3) The period of time during which the offer may be accepted.

Finally, KPBC § 17.10.090 provides that land must be sold or leased at fair market value "except as provided in 17.10.120(I) and 17.10.120(D)." Kenai Peninsula Borough Code § 17.10.120(D) expressly permits sale of borough land at less than fair market value if it is in the best public interest.[17] Thus, even if this court were to apply KPBC § 17.10.090 and KPBC § 17.10.120(D) rather than KPBC § 17.10.100(C), the outcome in this case would be the same: KPB complied with KPB ordinances by approving a land exchange based on express factual findings that the exchange was in the Borough's best interest.

### 2. The land exchange complies with KPBC § 17.10.100(C).

■■■ The Borough's power to manage and dispose of borough land is to be liberally construed.[18] Even if Cabana generates a genuine issue of material fact, Cabana "has the burden of overcoming the presumption that proceedings of the governing body of a municipality have been conducted in accordance with the law."[19] Cabana does not satisfy this burden merely by pointing out anomalies in the manner in which KPB appraised the land or approved the land exchange.[20] Because we conclude that the KPB

---

**17.** KPBC § 17.10.120(D) provides:

The assembly may authorize the sale of land for an amount other than the fair market value only if the ordinance authorizing the sale contains:
1. A finding that sale for an amount other than fair market value is in the best public interest;
2. A statement of facts on which the finding is based; and
3. The period of time during which the offer may be accepted.

**18.** AS 29.35.400.

**19.** *McCormick v. City of Dillingham*, 16 P.3d 735, 738 (Alaska 2001) (internal citation and quotation omitted). We first applied the presumption of government regularity in *Liberati v. Bristol Bay Borough*, 584 P.2d 1115, 1117 (Alaska 1978), where we affirmed the superior court's order of summary judgment in favor of the Borough on a claim attacking a borough ordinance imposing a

sales tax on all raw fish caught within the borough. We held that the plaintiffs, the nonmoving party, failed to offer any evidence to overcome the presumption that the municipality complied with the statutory requirements for a public hearing by making copies of the tax ordinance available and hearing all persons who wish to be heard. *Id.* In *City of St. Mary's v. St. Mary's Native Corp.*, 9 P.3d 1002, 1007–08 (Alaska 2000), we again applied the presumption in holding that the municipality could repeal a tax exemption by ordinance without public vote. Finally, in *McCormick*, 16 P.3d at 738, we held that the plaintiff had failed to present sufficient evidence to overcome the presumption that the city lawfully passed its sales tax.

**20.** *See McCormick*, 16 P.3d at 738–39 ("Although McCormick can point to anomalies in the codification of the sales tax in 1977, he has not established that the city failed to comply with the law.").

Assembly could reasonably determine that the land exchange was in the Borough's best interest and it provided a statement of facts on which this finding was based, as required under KPBC § 17.10.100(C), we affirm the trial court's grant of summary judgment to KPB.

If the Borough received property that was worth substantially less than the property it gave up and received no other nonmonetary benefits, such an exchange arguably would not be in the Borough's best interest. Accordingly, it is understandable that the plaintiffs are troubled by the Homer parcel's substantial drop in valuation from $79,200 to $33,700 in one year's time. However, given the great deference afforded municipal action and the presumption of government regularity, this fact, even in tandem with the plaintiffs' conflicting appraisal, does not create a genuine issue of material fact tending to show the kind of abuse of discretion or bad faith necessary to overcome the presumption of government regularity.[21]

Our decision in *Norene v. Municipality of Anchorage*[22] supports our conclusion in this case. In *Norene*, we found no abuse of discretion where the Municipality of Anchorage authorized a controversial land exchange. The challengers alleged that the appraisals were out of date and that one contained a $209,000 error.[23] We concluded, however, that it was not the court's role to judge the "expediency or necessity of measures relating to local government."[24] Appraisers informed the Anchorage Assembly that the

land exchange was financially sound, and the Assembly was aware of the varying estimates of the value of the land it was giving up and the problems with the properties it was acquiring. Under these circumstances, we affirmed the superior court's grant of summary judgment in favor of the Municipality despite the factual disputes regarding the accuracy of the appraisals or the condition of the land involved in the exchange.[25]

Similarly, we conclude that the KPB Assembly is in the best position to determine that the land exchange was in the Borough's best interest. There is evidence that, like the municipality in *Norene*, KPB weighed the pros and cons of the exchange prior to approving it. The planning director candidly informed the mayor that "[p]otential negative impacts to the borough for this exchange include the simple loss of value ($33,500 v. $24,500) and setting of preceden[t] for resolving land use conflicts through exchanges or purchases." But she justified her recommendation that the mayor approve the exchange by listing the same findings of fact as those ultimately adopted by the KPB Assembly in Ordinance 99–17. Those findings indicated that the exchange was in the Borough's best interest based on the value of the properties and the nonmonetary benefits of the exchange.[26]

Moreover, the undisputed evidence indicates that the Borough complied with the KPB Code in approving the exchange. The Borough based its approval of the exchange on an appraisal by a qualified appraiser.[27]

---

**21.** *See Norene v. Municipality of Anchorage*, 704 P.2d 199, 202 (Alaska 1985) (reviewing for abuse of discretion municipality's decision to consummate land exchange based on allegedly erroneous appraisals of land in question).

**22.** 704 P.2d 199 (Alaska 1985).

**23.** *Id.* at 202.

**24.** *Id.*, quoting 2 E. McQuillin, THE LAW OF MUNICIPAL CORPORATIONS § 10.33, at 825 (3d ed.1979).

**25.** *Id.*

**26.** The planning director and the KPB Assembly made the following factual findings: (1) Shafer had applied for a material site permit for the Shafer parcel; (2) the public was concerned

about the potential harm to the environment that would result from the permit's issuance; (3) Shafer had agreed to restrictions on the use and development of the Homer parcel; (4) the Shafer parcel and the surrounding area would be most appropriately used for a single-family residence and for recreation and preservation; (5) the Borough comprehensive plan's goal is to reduce land use conflicts; (6) the proposed exchange is of almost equal value, excluding the value of gravel resources on the Shafer parcel; and (7) restrictions on future use of the Homer parcel will help protect public safety and welfare.

**27.** Louise Paul's name appeared as being an active appraiser as of 1998, and in August 1999 Jim Lawyer, the Director of Assessing, testified by affidavit that she is a certified assessor/appraiser.

The appraisal of the Homer parcel was performed as part of a comprehensive program undertaken for a period of ten months, in which 13,000 parcels were reappraised. Many of the prior appraised values were adjusted, some substantially. Only after these appraisals were completed did the planning department contact the assessing department regarding the Homer and Shafer parcels. On February 1, 1999, the appraisal manager stated that the appraisals of the Homer and Shafer parcels were still accurate. The fact that the value of the Homer parcel was appraised before the assessing department was informed of the proposed exchange tends to indicate that the Borough acted in accordance with the law, and Cabana has presented insufficient evidence to support its position that the appraisal and exchange process in this case violated the KPB Code.

In sum, the land exchange effected by Ordinance 99–17 satisfies KPBC § 17.10.100(C)'s requirement that "the ordinance authorizing the exchange sale contain[] a finding that the exchange sale is in the best interests of the borough and a statement of the facts on which the finding is based."

## B. KPB's Approval of the Land Exchange Does Not Violate Cabana's Right to Substantive Due Process.

Substantive due process is denied when a legislative enactment bears no reasonable relationship to a legitimate governmental purpose.[28] As discussed above, the KPB Assembly made several factual findings regarding the benefits to KPB of the land exchange. For example, KPB Ordinance 99–17 indicates that the exchange will reduce a land use conflict and protect the public safety and welfare by restricting future use of the Homer parcel. These are legitimate govern-

mental purposes, and they are laid out in goal 5.5 of the Borough's comprehensive plan to reduce land use conflicts and in KPBC § 17.10.010.[29] Cabana has offered no evidence that reducing land use conflict and protecting public welfare and safety are not legitimate governmental purposes.

Ordinance 99–17 bears a fair and substantial relationship to the Borough's policy of reducing land use conflicts and protecting public welfare and safety. A land use dispute existed over Clifford Shafer's application to operate a material site on his property in Anchor Point. Numerous members of the public voiced their opposition to granting Shafer a material site permit and the Coastal Consistency Commission initiated a review of the potential impact of a material site on the Shafer parcel. Shafer approached the Borough to exchange his property, which is one-half wetlands and is in a primarily residential neighborhood, with KPB's parcel in Homer, which is one-third wetlands and abuts an asphalt plant, the borough landfill, and a State Department of Transportation maintenance yard. Although there was public opposition to the exchange, the KPB Assembly mitigated the potential harm to neighbors of the Homer parcel by imposing restrictions on its use and by classifying the Homer parcel as light industrial rather than heavy industrial.

The elected borough assembly, rather than the courts, should decide between competing notions of public policy.[30] We conclude that there is a fair and substantial relationship between KPB's approval of the land exchange and the legitimate governmental goals of reducing land use conflicts and protecting public health and safety. Therefore, the alleged factual disputes proffered by Cabana are immaterial and summary judgment

---

**28.** *Norene v. Municipality of Anchorage,* 704 P.2d 199, 202 (Alaska 1985).

**29.** KPBC § 17.10.010 states:
    A. It is the policy of the Kenai Peninsula Borough to manage all borough owned and municipal entitlement lands and resources to provide for:
    1. The efficient acquisition, management, classification and disposal of borough lands;
    2. The promotion of orderly development;

    3. The protection and orderly management of the borough's natural resources;
    4. The preservation of borough lands and resources for wildlife habitat, scenic value, recreational needs, and historic needs;
    5. The retention of borough lands essential for health, safety and education needs;
    6. The orderly disposal of lands and resources in a manner which is fair to all.

**30.** *Id.*

was properly granted in favor of KPB on the substantive due process claim.

### C. The Appraisal of the Homer Parcel Did Not Violate the KPB Code or Substantive Due Process by Failing To Account for the Light Industrial Classification.

Cabana next argues that the KPB Assembly based its approval of the land exchange on an appraisal of the Homer parcel that failed to account for the reasonably probable classification of that parcel as light industrial. KPB argues that the classification would not have impacted the value placed on the Homer parcel by the KPB Assessing Department. The record supports this assertion.

Gary Fandel, the appraisal manager and appraiser Louise Paul's supervisor at the time of the valuation, stated in his deposition that the Homer parcel is in an unzoned area. He testified that an industrial classification in an unzoned area does not affect the valuation by the assessing department. He added that unzoned vacant or raw land is valuated by direct sales comparison, whereas land in a zoned area is appraised by accounting for the potential for development.[31] The Director of Assessing, Jim Lawyer, also stated in his affidavit that the Shafer and Homer parcels are both in unzoned areas. He testified that the assessing department would not have any reason to change the appraised value of the Homer parcel for 2000 from its 1999 value. The undisputed evidence indicates that industrial classifications do not affect KPB's valuations of land in an unzoned area and the Homer parcel was in an unzoned area. Therefore, we need not determine whether Paul accounted for the light industrial classification in appraising the Homer parcel.

KPB's procedures for appraising land comply with the KPB Code. Kenai Peninsula Borough Code § 17.10.250(J) defines "fair market value" as "the estimated price that land would bring in an open market and under the then prevailing market conditions in a sale between a willing seller and a willing buyer both conversant with the property and with prevailing general price levels." Jim Lawyer described in his affidavit the actual practice of the KPB Assessing Department in appraising land:

> When establishing a value for a parcel current market sales are used to determine fair market value. Current market sales take into consideration the market trends in a neighborhood. Establishing the value of a piece of raw land which is adjacent to industrial uses would take the surrounding trends and land use into consideration.

Cabana offered no evidence that Paul acted inconsistently with what appears to be a policy of excluding from consideration potential industrial classifications when appraising a parcel of land in an unzoned area, or that any KPB ordinance forbids this practice. Rather, Cabana relies on *Martens v. State*, in which we stated that "it is a well established rule of law that a jury, in determining the fair market value of condemned land, may consider zoning changes which were reasonably probable at the time the land was taken."[32] However, *Martens* is not controlling because here it is KPB rather than a jury that determined fair market value and Cabana has not overcome the presumption of government regularity.

Cabana has failed to establish that Paul was not qualified or that the appraisal procedures were flawed. We therefore conclude that KPB's failure to consider the subsequent light industrial classification of the Homer parcel did not violate the KPB Code or Cabana's right to substantive due process.

### V. CONCLUSION

A presumption of government regularity applies in this case and we defer to the factual determinations of the KPB Assembly. Cabana has failed to establish that there is a factual dispute regarding KPB's appraisal procedures or that its procedures violate the KPB Code or substantive due process. Ac-

---

**31.** Cabana notes that Lawyer testified that commercially zoned property would have a higher appraised value than residential zoning. Because Cabana does not dispute that the Homer parcel is not commercially zoned, this testimony is irrelevant.

**32.** 554 P.2d 407, 409 (Alaska 1976).

cordingly we AFFIRM the superior court's order granting summary judgment to KPB.[33]

---

**33.** Cabana argues that KPB violated the publication and notice requirements of KPBC § 01.12.040 and KPBC § 01.12.020. Because Cabana failed to raise this issue below, we do not consider it here. *See Krossa v. All Alaskan Seafoods, Inc.*, 37 P.3d 411, 418–19 (Alaska 2001).