*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RAYMOND DAPO, | ) | |
| | ) | Supreme Court No. S-17139 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-15-01892 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, OFFICE OF | ) | |
| CHILDREN'S SERVICES and TAUN | ) | No. 7423 – December 13, 2019 |
| LUCAS, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Michael C. Kramer and Robert John, Kramer and Associates, Fairbanks, for Appellant. Aisha Tinker Bray, Assistant Attorney General, Fairbanks, and Jahna Lindemuth, Attorney General, Juneau, for Appellee State of Alaska, Office of Children's Services. No appearance by Appellee Taun Lucas.

Before: Bolger, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carney, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

A young man filed suit against his adoptive mother for sexual abuse that

allegedly occurred 13 years earlier, shortly after he was adopted. The adoptive mother filed a third-party claim against the Office of Children's Services (OCS) for apportionment of fault and assigned the claim to the man in exchange for his agreement to release her from liability.

The superior court granted OCS's motion to dismiss the apportionment claim, holding that it was barred by the ten-year statute of repose, AS 09.10.055(a). The man appeals. We hold that the statute of repose applies to the apportionment claim and is not unconstitutional as applied. However, we also decide that there are issues of fact regarding the applicability of two exceptions to the statute of repose: claims for gross negligence and claims for breaches of fiduciary duty. We therefore reverse the superior court's order dismissing the apportionment claim and remand the case for further proceedings.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Raymond Dapo was born in 1990. OCS[1] took custody of him ten years later and, in April 2000, placed him in Taun Lucas's foster home. Lucas and her husband David legally adopted Dapo in May 2002. According to Dapo, Lucas began sexually abusing him shortly thereafter; Lucas, however, alleged that she was sexually abused by Dapo, and Dapo, then 11 years old, was arrested and charged with two counts of first-degree sexual assault. The charges were eventually dropped, and Dapo was returned to the custody of the State as a dependent child.

---

[1]    The responsible agency at the time was the Division of Family and Youth Services (DFYS), OCS's predecessor. We generally use the acronym OCS for consistency and ease of reference.

## B. Proceedings

Dapo reached the age of majority on September 5, 2008. On May 19, 2015, when he was 24 years old, Dapo filed a complaint against Lucas alleging that she had sexually abused him while he was a minor. In September 2015 Lucas filed a third-party claim against OCS for apportionment of fault, contending that OCS "had a duty to protect" Dapo and "negligently failed to protect" him. A month earlier she assigned to Dapo any rights she might have to recover on the apportionment claim in exchange for a complete release from liability for his sexual abuse claims against her.

OCS moved to dismiss Lucas's third-party claim on grounds that it was barred by Alaska's ten-year statute of repose, AS 09.10.055. The superior court denied the motion. The court concluded that the statute of repose did not apply, incorporating the reasoning of a summary judgment order in an earlier case in which the superior court had held that "[t]he statute of repose, as applied to facts in which the child's legal custodians are the alleged tortfeasors, is unconstitutional." We subsequently vacated the summary judgment order in that earlier case in a published opinion.[2] We then granted a petition for review on the statute of repose issue in Dapo's case, vacated the superior court's order, and remanded the case. Based on our earlier decision, we instructed the superior court to first determine whether the statute of repose applied to Dapo's claims and only then consider whether the statute was unconstitutional as applied.

On remand, the superior court held that the statute of repose "applies to and bars the third-party allocation of fault claim against OCS. The statute of repose is also not facially unconstitutional nor unconstitutional as applied to the third-party allocation

---

[2]     *Reasner v. State, Dep't of Health & Social Servs., Office of Children's Servs.*, 394 P.3d 610, 618 (Alaska 2017).

of fault claim against OCS in this case." The court dismissed all claims against OCS with prejudice. Dapo now appeals.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo.[3] Summary judgment is appropriate when "no genuine issues of material fact exist and where the moving party is entitled to judgment as a matter of law."[4] When ruling on a summary judgment motion, we view the facts in the light most favorable to the non-moving party.[5]

We interpret statutes "according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters."[6] "A presumption of constitutionality applies, and doubts are resolved in favor of constitutionality."[7]

## IV. DISCUSSION

Alaska's statute of repose, AS 09.10.055, bars "an action for personal injury, death, or property damage unless commenced within 10 years of . . . the last act alleged to have caused the personal injury, death, or property damage."[8] The statute lists a number of exceptions, including, as relevant here, when the personal injury resulted

---

[3] *Rathke v. Corr. Corp. of Am.*, 153 P.3d 303, 308 (Alaska 2007) (citing *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1110 (Alaska 2002)).

[4] *Id.*

[5] *Cabana v. Kenai Peninsula Borough*, 50 P.3d 798, 801 (Alaska 2002).

[6] *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (quoting *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999)).

[7] *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 71 (Alaska 2001) (quoting *Baxley v. State*, 958 P.2d 422, 428 (Alaska 1998)).

[8] AS 09.10.055(a)(2). Subsection (a)(1) focuses on claims involving allegedly defective construction and is not applicable here.

from "an intentional act or gross negligence"[9] or a "breach of trust or fiduciary duty."[10]

The parties agree that the statute of repose does not bar Dapo's sexual abuse claim against Lucas, both because of the "intentional act" exception and, separately, because AS 09.10.065(a) allows "[a] person [to] bring an action at any time for conduct that would have, at the time the conduct occurred," constituted various sexual offenses, including "felony sexual abuse of a minor," "felony sexual assault," and "unlawful exploitation of a minor." The conduct alleged by Dapo falls within the scope of AS 09.10.065(a), which therefore lifts the time bar for his claim against Lucas.[11]

The parties' dispute centers on whether the statute of repose bars Lucas's third-party claim for apportionment against OCS. The superior court held that it did. Dapo, as assignee of that claim, argues that the statute does not apply because of rules of statutory interpretation and the rationale of our decision in *Alaska General Alarm, Inc. v. Grinnell*, in which we discussed apportionment claims in the context of statutes of limitation.[12] Dapo argues in the alternative that if the statute of repose does apply, the apportionment claim falls within the statute's exceptions for claims involving gross negligence and breach of fiduciary duty. Finally, he argues that if the statute of repose otherwise applies, it is unconstitutional as applied because it denies him access to the courts. We discuss each argument in turn.

---

[9] AS 09.10.055(b)(1)(B).

[10] AS 09.10.055(b)(1)(F).

[11] First degree sexual abuse of a minor, a felony, occurs if the offender is 18 years or older and "engages in sexual penetration with a person who is under 18 years of age, and the offender is the victim's natural parent, stepparent, adopted parent, or legal guardian." AS 11.41.434(a)(2). Dapo alleges that Lucas forced him to engage in sexual intercourse shortly after she adopted him, when he was 11 or 12 years old.

[12] 1 P.3d 98 (Alaska 2000).

**A.** **The Statute Of Repose For The Underlying Claim Applies To The Apportionment Claim As Well.**

Dapo argues that the statute of repose does not bar apportionment claims because it is specifically limited to actions "for personal injury, death, or property damage,"[13] conspicuously omitting claims for apportionment. The question we must answer is whether a claim for the apportionment of personal injury damages constitutes "an action for personal injury" as that phrase is used in the statute. Dapo contends that we should apply the doctrine of *expressio unius est exclusio alterius* — "where certain things are designated in a statute, all omissions should be understood as exclusions."[14]

But the legislature has indicated its intent that apportionment claims based on "personal injury, death, or property damage" be subject to the statute of repose. Alaska Statute 09.17.080(a) governs apportionment of damages. It requires the trial court to

> instruct the jury to answer special interrogatories or, if there is no jury, [to] make findings, indicating . . . the percentage of the total fault that is allocated to each claimant, defendant, third-party defendant, person who has been released from liability, or other person responsible for the damages unless the person was identified as a potentially responsible person, *the person is not a person protected from a civil action under AS 09.10.055* [*the statute of repose*], and the parties had a sufficient opportunity to join that person in the action but chose not to . . . . [Emphasis added.]

In other words, "a potentially responsible person" should be joined as a party unless "protected from a civil action under" the statute of repose, in which case — the statute assumes — the person cannot be joined. But to ensure that the named parties'

---

[13]    AS 09.10.055(a).

[14]    *Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066 (Alaska 1991) (quoting *Puller v. Municipality of Anchorage*, 574 P.2d 1285, 1287 (Alaska 1978)).

percentages of fault may be accurately determined, fault may be allocated to "a potentially responsible person" who cannot be joined as a party because the person *is* "protected from a civil action under" the statute of repose — though this does not result in a judgment against the "protected" person.[15]

The apportionment statute thus specifically acknowledges that persons who would otherwise be "responsible for the damages" on an apportionment claim may be persons "protected from a civil action" by the statute of repose. Legislative history confirms that the legislature was aware of the interplay between the statute of repose and apportionment claims. Discussing the 1997 Tort Reform Initiative — which both created the apportionment statute and substantially revised the statute of repose[16] — Representative Davies stressed to the House Finance Committee that "the statute of repose removes certain people from responsibility. . . . [I]f a person is barred from being brought to the table by the statute of repose . . . they cannot be apportioned a portion of the fault."[17] Dapo directs us to no contrary legislative history.

---

[15] AS 09.17.080(c) ("[A]n assessment of a percentage of fault against a person who is not a party may only be used as a measure for accurately determining the percentages of fault of a named party. Assessment of a percentage of fault against a person who is not a party does not subject that person to civil liability in that action and may not be used as evidence of civil liability in another action.").

[16] *See Evans ex rel. Kutch v. State*, 56 P.3d 1046, 1048-49 (Alaska 2002) (listing challenged "tort reform provisions" of chapter 26, SLA 1997, including "the comparative apportionment of damages under AS 09.17.080" and "the 'statute of repose' under AS 09.10.055"); *id.* at 1067-68 ("Chapter 26, SLA 1997 altered the statute of repose, which formerly applied only to actions based on injuries in connection with improvements to real property, and shortened the period from fifteen to ten years." (citations omitted)).

[17] Minutes, H. Fin. Comm. Hearing on H.B. 58, 20th Leg., 1st Sess. Tape HFC 97-61, Side 1 (Mar. 14, 1997) (statement of Rep. J. Davies).

Dapo argues, however, that the statute of repose should not apply to Lucas's apportionment claim because of the rationale of *Alaska General Alarm, Inc. v. Grinnell.*[18] In that case, observing that "third-party actions [for apportionment] are traditionally deemed to accrue upon judgment or settlement" of the underlying claim, we held that the statute of limitations governing the underlying claim "should not bar the liability of third-party defendants to the plaintiff for their share of fault."[19] We reasoned that if the statute of limitations barred third-party liability, then defendants would have incentive to wait until after the limitations period expired before joining third parties, thereby allowing "empty chair defendants" — that is, defendants in name only who could be blamed but who could not be made to pay damages — and frustrating the plaintiff's recovery.[20] We also reasoned that Alaska Civil Rules 14(a) and (c), by allowing a defendant to file a third-party apportionment claim any time after the action commenced, "were intended to be neutral on the statute of limitations question."[21]

*Alaska General Alarm* was concerned with the statute of limitations, not the statute of repose, and the differences dictate a different result here. "[A] statute of limitation[s] begins to run when the plaintiff's cause of action accrues or is discovered," whereas the statute of repose "may bar a cause of action *before it accrues*" because the statute of repose begins to run from "the last act alleged to have caused the personal injury."[22] The statute of limitations, though of fixed duration, is still shaped by a case's

---

[18] 1 P.3d 98 (Alaska 2000).

[19] *Id.* at 104, 106.

[20] *Id.* at 102-03.

[21] *Id.* at 106 n.46.

[22] *Turner Constr. Co. v. Scales*, 752 P.2d 467, 469 n.2 (Alaska 1988)
(continued...)

circumstances, beginning to run only when a person "discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action" under the discovery rule.[23]   The statute of repose, on the other hand, "intends to completely extinguish a defendant's liability upon the expiration of a certain, set period of time"[24] and is meant to act as "an absolute bar"[25] to liability; potential defendants are afforded peace of mind after a set amount of time regardless of whether the prospective plaintiff's cause of action has accrued.[26]

Given the language of the relevant statutes, legislative history, and the recognized differences between statutes of repose and statutes of limitation, we conclude that the statute of repose bars an apportionment claim seeking to apportion fault "for personal injury, death, or property damage" at the same time it would bar the underlying claim.  Here, the last act alleged to have caused Dapo's personal injury occurred before the police took him into custody on September 7, 2002.  Lucas's 2015 apportionment claim against OCS is barred by the ten-year statute of repose — unless it falls within one of the statute's exceptions, which we address next.

---

[22]      (...continued)
(emphasis added); AS 09.10.055(a).

[23]      *John's Heating Serv. v. Lamb*, 129 P.3d 919, 923 (Alaska 2006) (quoting *Cameron v. State*, 822 P.2d 1362, 1366 (Alaska 1991)).

[24]      *Sands ex rel. Sands v. Green*, 156 P.3d 1130, 1137 (Alaska 2007) (Eastaugh, J., dissenting).

[25]      Minutes, H. Judiciary Standing Comm. Hearing on H.B. 58, 20th Leg., 1st Sess. Tape 97-23, SCA No. 1503 (Feb. 21, 1997) (statement of Rep. Eric Croft).

[26]      *See id.* at No. 0764 (statement of Rep. Brian Porter) (explaining that discovery rule does not apply to statutes of repose because once the statutory period "ha[s] been completed, that would be a bar to filing a case").

### B. Whether Lucas's Apportionment Claim Falls Within An Exception To The Statute Of Repose Presents Unresolved Questions Of Fact.

The statute of repose's listed exceptions include claims in which the alleged "personal injury, death, or property damage resulted from . . . (B) an intentional act or gross negligence; . . . or (F) breach of trust or fiduciary duty."[27] Dapo argues that both exceptions apply because, taking all facts in the light most favorable to him as the non-moving party,[28] his allegations suffice to show that OCS either was grossly negligent or committed a breach of trust or fiduciary duty in causing his injuries from sexual abuse.[29]

#### 1. The gross negligence exception

To establish negligence, a party must show "(1) a duty of care; (2) breach of the duty; (3) causation; and (4) harm."[30] "Whether a party has a duty of care and, if so, the nature and scope of that duty are questions of law."[31]

That OCS owes at least a duty of reasonable care to a child in its custody does not appear to be disputed; OCS concedes the existence of a "special relationship" in such circumstances. By statute, "a relationship of legal custody exists" between OCS and a child in its custody,

---

[27]     AS 09.10.055(b)(1)(B), (F).

[28]     *See Cabana v. Kenai Peninsula Borough*, 50 P.3d 798, 801 (Alaska 2002).

[29]     Dapo does not address the "intentional conduct" exception until his reply brief, so we do not address it. *See* Alaska R. App. P. 212(c)(3) (stating reply brief "may raise no contentions not previously raised in either the appellant's or appellee's briefs"); *see also Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 158 (Alaska 1992) (stating we need not consider theory first raised in reply brief).

[30]     *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000).

[31]     *Lindsey v. E & E Auto. & Tire Serv., Inc.*, 241 P.3d 880, 885 (Alaska 2010).

impos[ing] on the department . . . the responsibility of physical care and control of the child, the determination of where and with whom the child shall live, the right and duty to protect, nurture, train, and discipline the child, the duty of providing the child with food, shelter, education, and medical care, and the right and responsibility to make decisions of financial significance concerning the child.[32]

The statutory responsibility for determining "where and with whom the child shall live" necessarily requires that OCS carry out the responsibility non-negligently. In *R.E. v. State* we held that because DFYS — OCS's predecessor agency — had undertaken to license daycare facilities, it "was under a duty to exercise reasonable care in carrying out that function," specifically by taking reasonable steps to uncover the possibility of sexual abuse.[33] In *P.G. v. State, Department of Health & Human Services, Division of Family & Youth Services*, we held that "DFYS stands in a special relationship both with children in need of aid who come under its supervision and with prospective foster parents whom it seeks to enlist as their custodians."[34] This meant that the agency was required "to exercise due care to minimize potential harm by making reasonable efforts to gather and disclose facts necessary to give foster parents an informed basis for deciding whether to accept" into their home a child with possibly dangerous propensities.[35] These cases direct our conclusion here: that OCS had a duty to exercise reasonable care when placing Dapo in foster care with the Lucases and approving his adoption.

---

[32]  AS 47.10.084(a).

[33]  878 P.2d 1341, 1345-48 (Alaska 1994).

[34]  4 P.3d 326, 331 (Alaska 2000).

[35]  *Id.* at 332.

The "gross negligence" necessary for the statute of repose's exception to apply is not merely a failure to exercise reasonable care but a "major departure from the standard of care."[36] "Whether a defendant breached its duty of care is typically a factual question for the jury,"[37] as are whether the lack of care amounts to gross negligence[38] and whether the breach of duty caused the plaintiff harm.[39]

OCS argues that because the alleged abuse occurred *after* Dapo's adoption, he was no longer under OCS supervision and therefore there was no special relationship and no duty as a matter of law. We have held that a finalized adoption decree terminates the "former parent's legal relationship with the child,"[40] although we have not ruled specifically on OCS's post-adoption duty to children formerly in its care.

---

[36] *Maness v. Daily*, 307 P.3d 894, 905 (Alaska 2013) (quoting *Storrs v. Lutheran Hosp. & Homes Soc'y of Am., Inc.*, 661 P.2d 632, 634 (Alaska 1983)).

[37] *Lindsey v. E & E Auto. & Tire Serv., Inc.*, 241 P.3d 880, 885 (Alaska 2010).

[38] *See, e.g.*, *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 187 (4th Cir. 2018) (Under Maryland law, "[t]he question of gross negligence is typically a question for the jury but can be determined as a matter of law when the facts clearly show that no reasonable jury could find that the defendant's actions amounted to gross negligence."); *Decker v. City of Imperial Beach*, 257 Cal. Rptr. 356, 358 (Cal. App. 1989) ("Generally it is a triable issue of fact whether there has been such a lack of care as to constitute gross negligence but not always." (citation omitted)); *Garrison v. Pac. Nw. Bell*, 608 P.2d 1206, 1212 (Or. App. 1980) ("Ordinarily, the issue of gross negligence is a question of fact to be decided by the jury. . . . The court will withdraw the issue from the jury only when it can say as a matter of law that the actor's conduct falls short of gross negligence.").

[39] *Burton v. Fountainhead Dev., Inc.*, 393 P.3d 387, 399 (Alaska 2017) ("The determination of proximate cause usually requires the resolution of questions of fact by the fact-finder; it 'becomes a matter of law only where reasonable minds cannot differ.'" (quoting *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007))).

[40] *In re Adoption of S.K.L.H.*, 204 P.3d 320, 326 n.23 (Alaska 2009).

The claim against OCS, however, is based on its actions *before* the adoption, when the existence of a special relationship between OCS and Dapo, as a child in its legal custody, is undisputed. Dapo alleges that "OCS clearly breached [its] duty by dumping [Dapo] in a home where it already knew other foster children had been abused, and it was clearly foreseeable that he would be abused too." He alleges that when OCS did this it knew Lucas "had forced a child to sit in cold water up to his neck for an hour or longer while his teeth were chattering and he was crying and fighting to get out," "was hitting or spanking her foster children," "was intentionally giving them too much medication," and lacked a clear sense of personal boundaries. Dapo alleges that OCS "clearly understood that Ms. Lucas was not fit to be a foster parent because it removed all the children from her home [in 1999] and stated she needed to get a psychological evaluation to assess whether she was a danger to the safety of children." Dapo claims that OCS placed him in Lucas's home six months later regardless of its knowledge of the risks. If OCS breached its duty to Dapo by placing him in harm's way, it does not matter to Dapo's cause of action that the resulting harm did not occur until OCS no longer had that duty, assuming he can prove that the breach caused the harm.[41]

### 2. The breach of fiduciary duty exception

The statute of repose's exception for "breach of trust or fiduciary duty" may also be relevant here. We have never used the word "fiduciary" to describe the State's relationship with the children in its care, though a few jurisdictions have.[42] But OCS's

---

[41] *Cf. Jones v. Westbrook*, 379 P.3d 963, 967 (Alaska 2016) (explaining that for purposes of causes of action for professional malpractice, "regardless of when the duty is breached, the cause of action does not accrue and the statute of limitations ordinarily does not begin to run until 'the date on which the plaintiff incurs injury' " (quoting *Jarvill v. Porky's Equip., Inc.*, 189 P.3d 335, 338 (Alaska 2008))).

[42] *See Kane v. Chester Cty. Dep't of Children, Youth & Families*,
(continued...)

duties under AS 47.10.084(a) include nearly all aspects of the child's direction, control, and protection, from "where and with whom the child shall live" to "decisions of financial significance concerning the child." We note further that for purposes of a different chapter in Title 47 — dealing with the protection of vulnerable adults — the legislature defined "fiduciary duty" broadly to mean "the duty of a third party who stands in a position of trust or confidence with another person, *including a vulnerable adult*, to act with due regard for the benefit and interest of that person."[43] Although this definition is not directly applicable to child in need of aid proceedings under Title 47, chapter 10, we take some direction from the legislature's use of fiduciary terminology in a closely analogous context. And the "special relationship" the legislature created for dependent children seems to fall squarely within our usual common-law description of fiduciary relationships:

> We have stated that a fiduciary relationship "exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." "Fiduciary relationships are generally defined by a level of trust beyond that in ordinary business

---

[42]    (...continued)
10 F. Supp. 3d 671, 693-94 (E.D. Pa. 2014) ("Under Pennsylvania law, the relationship between a minor foster child and an agency caring for foster children[] is a fiduciary relationship where one party is bound to act for the benefit of another."); *In re Leah S.*, 898 A.2d 855, 861 (Conn. App. 2006) ("In seeking and accepting the child's charge, the commissioner [of children and families] acted as a fiduciary to the family and for the state."), *rev d on other grounds*, 935 A.2d 1021 (Conn. 2007).

[43]    AS 47.24.900(9) (emphasis added).

relationships," and "[l]oyalty and the disavowal of self interest are hallmarks of the fiduciary's role."[44]

We conclude, therefore, that the relationship between OCS and children in its legal custody pursuant to AS 47.10.084 is a fiduciary relationship for purposes of AS 09.10.055(b)(1)(F), the "breach of trust or fiduciary duty" exception to the statute of repose.

By deciding that Lucas's apportionment claim may fall within these two exceptions to the statute of repose, we do not mean to preclude summary judgment if the superior court determines that "no reasonable person could discern a genuine factual dispute on a material issue."[45] Such a determination is not possible on the record before us.

## C. The Statute Of Repose Is Not Unconstitutional As Applied To Lucas's Apportionment Claim Against OCS.

Dapo contends that if the statute of repose applies to Lucas's apportionment claim, it unconstitutionally deprives him of access to the courts because it leaves him in the absurd position of having to rely on Lucas and OCS to sue themselves on his behalf. "A party raising a constitutional challenge to a statute bears the burden of demonstrating the constitutional violation."[46] "An as-applied [constitutional] challenge requires

---

[44] *Williams v. Baker*, 446 P.3d 336, 340 (Alaska 2019) (alteration in original) (first quoting *Seybert v. Cominco Alaska Expl.*, 182 P.3d 1079, 1090 (Alaska 2008); then quoting *Munn v. Thornton*, 956 P.2d 1213, 1220 (Alaska 1998)).

[45] *See Christensen v. Alaska Sales & Service, Inc.*, 335 P.3d 514, 520 (Alaska 2014).

[46] *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 71 (Alaska 2001) (quoting *Baxley v. State*, 958 P.2d 422, 428 (Alaska 1998)).

evaluation of the facts of the particular case in which the challenge arises."[47] "The right of access to the courts is an important interest requiring enhanced scrutiny; however, that right is impaired only by state action that actually limits or blocks access to the courts."[48] "The United States Supreme Court has called it 'an uncontroversial principle of constitutional adjudication . . . that a plaintiff generally cannot prevail on an as-applied challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally applied to [him or her].' "[49]

We applied this principle in *Reasner v. State, Department of Health & Social Services, Office of Children's Services*, holding that the superior court should refrain from deciding an as-applied constitutional challenge until the plaintiff was able to show the law's unconstitutional application to her.[50] Because there were questions about when Reasner's claims arose and whether they were subject to various exceptions to the statute of repose, including those for "gross negligence, misrepresentation, or breach of fiduciary duty," we remanded to the superior court to "determine whether the statute of repose applies to Reasner's case before it considers Reasner's as-applied constitutional challenge."[51] In Dapo's case, however, we decide the as-applied challenge despite the possibility that the superior court, on remand, will moot the issue by

---

[47] *Kyle S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 1262, 1268 (Alaska 2013) (citing *State v. ACLU of Alaska*, 204 P.3d 364, 372 (Alaska 2009)).

[48] *Evans ex rel. Kutch v. State*, 56 P.3d 1046, 1052 (Alaska 2002).

[49] *Reasner v. State, Dep't of Health & Social Servs., Office of Children's Servs.*, 394 P.3d 610, 618 (Alaska 2017) (emphasis omitted) (quoting *McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014)).

[50] *Id.* (quoting *McCullen*, 573 U.S. 464 at 485 n.4).

[51] *Id.*

concluding that the statute does not apply because of one or more exceptions. The undisputed facts give us a sufficient basis for deciding the constitutional issue while it is before us on this appeal.

We conclude that Dapo's right of access to the courts has not been "impaired . . . by state action that actually limits or blocks [his] access to the courts." His claim against Lucas for sexual abuse was indisputably timely under both the applicable statute of limitations, AS 09.10.065(a), and the "intentional act" exception to the statute of repose, AS 09.10.055(b)(1)(B). As for Lucas's claim against OCS for apportionment of fault, if it is barred by the statute of repose it is not because Dapo's access to the courts was blocked by state action or was limited by suspect decisions made by Dapo's parents or guardians.[52] As OCS points out, Dapo reached the age of majority in 2008 and had another four years after that — until 2012 — to pursue an action within the ten-year period of the statute of repose based on harm caused in 2002. He filed suit in 2015, nearly seven years after reaching the age of majority.

Dapo appears to address his delay in filing suit as an adult when he argues that sexually abused children "may take years to understand that the emotional difficulties and other dysfunction [they are] suffering are caused by sexual abuse" and that courts "cannot presume that a sexually-abused child has sufficient information about OCS's role in the matter to trigger the running of the statute of limitations against OCS." But we addressed this discovery-rule-based challenge to the statute of repose in *Evans ex rel. Kutch v. State*, in which the plurality opinion observed that "[t]he discovery rule is a common law rule created by this court, and is not based on any constitutional

---

[52]   *Cf. Sands ex rel. Sands v. Green*, 156 P.3d 1130, 1136-39 (Alaska 2007) (Eastaugh, J., dissenting) (questioning whether statute of repose would be unconstitutional if applied to bar minor's suit before minor reaches age of majority).

principles," meaning that "the legislature is free to modify or abolish" it.[53] "Therefore, to the extent that AS 09.10.055 limits the traditional discovery rule, the legislature had the power to do so in enacting the statute."[54]

We conclude that the statute of repose is not unconstitutional as applied to Lucas's apportionment claim against OCS.

### D. Sovereign Immunity

The State briefly addresses a statutory immunity defense as an alternative ground for affirming summary judgment in its favor.[55] The State cites AS 09.50.250(3), which bars an action against the State "if the claim . . . arises out of assault, battery," or another of several listed intentional torts. The State contends that because Dapo's claims against Lucas are for sexual abuse, and because "[s]exual abuse is a form of and 'arises out of' assault and battery," Lucas's third-party complaint for allocation of fault also "arises out of" assault and battery and is statutorily barred. But immunity from assault claims does not confer immunity from claims that the State breached an independent duty, thus allegedly allowing the assault to occur.

We construe the State's immunity under AS 09.50.250(3) "narrowly, because 'liability is the rule, immunity the exception' in claims against the [S]tate."[56]

---

[53]    56 P.3d at 1068.

[54]    *Id.* at 1068-69.

[55]    The State raised the statutory immunity defense in its motion for summary judgment, but the superior court did not address it, granting the State's motion solely on statute of repose grounds.

[56]    *Kinegak v. State, Dep't of Corr.*, 129 P.3d 887, 889 (Alaska 2006) (quoting *Native Vill. of Eklutna v. Alaska R.R. Corp.*, 87 P.3d 41, 49 (Alaska 2004)).

-18-                                                                                    **7423**

Federal decisions interpreting the Federal Tort Claims Act[57] "are persuasive authority in construing" AS 09.50.250(3) given the "nearly identical" language between the two.[58] Most federal circuit courts addressing this issue have held that "the government is liable for harm caused by intentional torts, provided the government breached some 'independent duty' that has a basis other than negligent supervision, training, or hiring of government employees."[59] As Dapo points out, "there is no employer-employee relationship between OCS and Lucas to muddy the water." The key inquiry is thus whether OCS had an independent duty to protect Dapo from harm of the sort alleged here. As described above in section IV.B, we have concluded that it did have such a duty, though fact issues remain as to whether the duty was breached.

In *Bembenista v. United States*,[60] which we have cited favorably several times,[61] the Court of Appeals for the D.C. Circuit decided that a government-operated military hospital owed a "duty of protective care" arising "out of its special relationship with" its patients, and it was not immune from liability if it breached this duty by failing to protect patients from staff member abuse.[62] We have reached similar conclusions in similar cases. In *B.R. v. State, Department of Corrections*, we held that the State "stands

---

[57]     *See* 28 U.S.C. § 2680(h) (2018).

[58]     *Kinegak*, 129 P.3d at 890.

[59]     *Id.* at 891.

[60]     866 F.2d 493, 498 (D.C. Cir. 1989).

[61]     *See B.R. v. State, Dep't of Corr.*, 144 P.3d 431, 436 (Alaska 2006); *Kinegak*, 129 P.3d at 891 n.30.

[62]     *Bembenista*, 866 F.2d at 498.

in a special relationship with inmates . . . [which] gives rise to a special protective duty"[63] and that Alaska's "intentional tort immunity statute did not preclude claims against the State . . . [based on] a breach of the State's independent protective duty to prevent assault."[64] In *Mattox v. State, Department of Corrections*, we held that the State "owes a duty to inmates to exercise reasonable care for the protection of their lives and health."[65] This duty even extended to harm caused by assault from other inmates so long as the harm was "reasonably foreseeable"; we noted that "evidence of an immediate threat of harm" at the summary judgment stage "would certainly help to raise a genuine issue of fact as to foreseeability."[66]

Here, OCS stood in a "special relationship" with Dapo, a "child[] in need of aid who c[a]me under its supervision."[67] OCS was therefore required to "exercise due care [through reasonable efforts] to minimize potential harm" to Dapo.[68] If the State breached its independent duty to Dapo, statutory immunity does not protect it even if Dapo's harm resulted from a third-party assault.

## V. CONCLUSION

We REVERSE the superior court's order dismissing the third-party apportionment claim against OCS and REMAND to the superior court for further proceedings consistent with this opinion.

---

[63] *B.R.*, 144 P.3d at 435.

[64] *Hill v. Giani*, 296 P.3d 14, 21 (Alaska 2013) (citing *B.R.*, 144 P.3d at 437).

[65] 323 P.3d 23, 26 (Alaska 2014).

[66] *Id.* at 28.

[67] *P.G. v. State, Dep't of Health & Human Servs., Div. of Family & Youth Servs.*, 4 P.3d 326, 331 (Alaska 2000).

[68] *Id.* at 331-32.