*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| EVVIE PUNCHES,<br><br>             Appellant,<br><br>v.<br><br>MCCARREY GLEN APARTMENTS,<br>LLC and WEIDNER PROPERTY<br>MANAGEMENT LLC,<br><br>             Appellees. | Supreme Court No. S-17465<br><br>Superior Court No. 3AN-17-06784 CI<br><br>O P I N I O N<br><br>No. 7502 – February 12, 2021 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Stephen Merrill, Anchorage, for Appellant. Gregory R. Henrikson, Walker & Eakes, LLC, Anchorage for Appellees.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Stowers, Justice not participating.]

CARNEY, Justice.

## I.    INTRODUCTION

A tenant sued her former landlord and its property management company, asserting that the companies negligently failed to eradicate mold in her apartment, thereby breaching the habitability provisions of the lease and causing her to suffer personal injury and property damage. After considerable delay involving discovery

disputes, the superior court granted summary judgment dismissing the tenant's personal injury claim. The parties went to trial on the tenant's property damage and contract claims after the superior court precluded the tenant from introducing evidence relating to her personal injury claim. The jury rejected the tenant's claims, and judgment was entered in favor of the companies. The tenant appeals, contending that the court erred by ruling against her in discovery disputes, by denying her a further extension of time to oppose summary judgment, and by limiting the evidence she could present at trial. We conclude that the court did not abuse its discretion when making the challenged rulings, and we therefore affirm the judgment against the tenant.

## II. FACTS AND PROCEEDINGS

### A. Punches's Tenancy And Health Issues

In March 2014, Evvie Punches rented a one-bedroom apartment in the Conifer Groves complex in Anchorage; she renewed the lease in April 2015. The complex was owned by McCarrey Glen Apartments, LLC and managed by Weidner Property Management, LCC.[1] Punches worked a three-weeks-on and three-weeks-off schedule at Prudhoe Bay. She would return to her apartment in Anchorage for her weeks off.

On April 1, 2014, Punches submitted a move-in report to Weidner. In the report Punches listed problems with her apartment, including "dirty" walls and floors. The report did not mention mold or smells.

In May Punches reported that the kitchen sink had begun to leak, "blister," and "stink." In July Punches reported that the sink was still leaking and that the kitchen walls "were streaked with a colored substance."

---

[1] We refer to all of these entities as "Weidner."

From September 2014 through March 2015 Punches made additional complaints to the property manager about air quality in her apartment and mold around her toilet. These issues continued despite a number of attempts by Weidner's maintenance staff to fix them, and Punches renewed her lease in April 2015.

In November 2015 Punches went to an Anchorage clinic for treatment of a rash on her head and neck. A physician's assistant diagnosed her with ringworm and prescribed treatment with medication and a shampoo. A few days later Punches again complained to Weidner about mold and wet carpet. When the property manager tried to arrange an inspection, Punches refused to allow maintenance staff into her apartment because she would not be home.

Punches returned to the same clinic for a follow-up medical exam in January 2016. Because her symptoms had not disappeared completely following the prescribed treatment, the physician's assistant prescribed another six weeks of the same treatment and recommended that she see a dermatologist. The dermatologist noted that Punches had a rash on the back of her head and prescribed a dandruff shampoo.

Punches wrote letters to Weidner in December 2015 and January 2016, complaining that her requests for inspection and repairs due to mold and water damage had not been taken seriously. Punches scheduled a meeting with Weidner's area director in mid-February 2016. The necessary repairs were never completed, however, because Punches did not allow maintenance staff into her apartment. Punches stopped paying rent after February.

In early March while working at Prudhoe Bay, Punches visited the clinic there and reported that she had been ill for the previous three days. She received breathing treatment and an IV and was sent home to Anchorage. The next week she had a follow-up appointment at the Anchorage clinic; the physician's assistant noted that Punches was "feeling improved" and had neither influenza nor a fever.

Punches moved out of her apartment on March 14, 2016 after delivering Weidner a "Notice of Defects in Essential Services." Her notice listed issues with the front door, mold on the ceiling, mold on the carpet, damage from a previous fire, water damage, and "insufficient windows" that permitted "free flowing air throughout" the apartment.

Punches moved to Minneapolis some time after she left her apartment. She sought care in Minnesota for various skin infections and reported that she had been exposed to mold for two years. She continued to pursue a connection between mold exposure and her recurring skin infections and other ailments.

## B. Initial Proceedings

In May 2017 Punches filed a complaint in superior court against Weidner and filed an amended complaint in June. Punches alleged that from the outset of her lease "the apartment suffered from major defects needing immediate repair." Punches claimed that her sink was "leaking substantially"; her ceiling was leaking and required repairs; and "the entryway door to the apartment had been damaged . . . leaving a large open gap to the outside even when the door was closed and locked." Punches also alleged that her apartment had suffered damage from a fire in the building. She claimed that Weidner's failure to make necessary repairs violated the Alaska Residential Landlord-Tenant Act[2] and as a result she lost the "reasonable enjoyment of her apartment." She also alleged that Weidner's failure to make repairs "constituted negligence . . . that caused serious illnesses" and that Weidner's actions amounted to "reckless disregard of [her] health and property interests."

---

[2]     AS 34.03.100(a)(1), (3) (requiring landlord to keep premises in "fit and habitable condition" including making necessary repairs).

In addition Punches claimed that mold in her apartment had caused other problems for which she was entitled to damages. She alleged that Weidner raised the temperature in her apartment to try to dry out mold, that her electric bill was therefore higher than it should have been, and that personal items were damaged by mold. She also claimed that she had suffered health problems from the mold. She alleged that the rash on her head and neck was due to "an unusual illness known as Mucormycosis, a flesh-eating fungal infection" and that she had contracted an upper respiratory tract infection, both of which she attributed to mold exposure. Punches sought $2 million in compensatory damages and $10 million in punitive damages from Weidner.

Weidner filed its answer a week later, denying all of Punches's allegations. In September, after Punches filed initial interrogatories and requests for discovery, Weidner responded by objecting to most of them.

Weidner deposed Punches in mid-December. Punches described the condition of the apartment and blamed mold in her apartment for causing her health problems. She admitted that no medical provider had diagnosed her with the "flesh-eating fungal infection" alleged in her complaint.

Punches filed a second set of interrogatories and requests for production. Weidner answered in early March 2018, again objecting to nearly all of them. Four days after receiving Weidner's response, Punches filed a motion to compel discovery replies, arguing that Weidner's objections were without merit and contained "[key] omissions."

**C.      Weidner's Protective Order And Partial Summary Judgment**

Weidner opposed the motion to compel and filed a cross-motion for a protective order in April. Weidner argued that Punches had not made a good faith effort

to obtain discovery, as required by rule,[3] because she had filed her motion only four days after Weidner's response without attempting to resolve the situation.

In its motion for a protective order Weidner asked the court to limit discovery until Punches could "prove that she can establish a prima facie case of her claimed bodily injuries." Weidner argued that Punches had provided no evidence that she suffered any bodily injuries or property damage as a result of Weidner's negligence nor had she provided any evidence that she ever had mucormycosis. Weidner conceded that it "would certainly make sense" to provide information such as the names of tenants who had lived in Punches's apartment but only after Punches had shown some evidence that she suffered any injury.

A week after filing its opposition to Punches's motion to compel, Weidner filed a motion for partial summary judgment to dismiss Punches's personal injury claim,[4] arguing that Punches had failed to meet her burden of proof showing a connection between her medical issues and exposure to mold. Weidner argued that because the conditions with which she had been diagnosed "are common in the general population" Punches needed to provide expert testimony to link them to mold. Weidner asserted that Punches had "not even raised the possibility that [her] common conditions were caused by mold, let alone . . . mold in her home."

Punches then filed her reply to the opposition to her motion to compel and attached photographs allegedly showing her belongings "caked with mold" which she

---

[3] *See* Alaska R. Civ. P. 37(a)(2)(B) (following failure to answer discovery request, other party may move to compel answer but motion must include certification that movant has conferred or attempted to confer in good faith with party failing to provide discovery before seeking court action to require it).

[4] Alaska Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."

said happened whenever she returned from a shift at work. She argued that the photographs connected conditions in her apartment to her health issues and that she had not yet been able to hire a medical expert because she had only recently obtained health insurance. She also argued that the medical professionals she had seen "took a lax approach diagnosing and treating" her condition, but that she expected the allergist she had seen to conclude that mold in her apartment had caused her health issues.

After objecting that Weidner's opposition to her motion "reads like a summary judgment motion," Punches argued that Weidner's refusal to provide discovery was the cause of her delay in making a connection to conditions in her apartment. She argued that she needed other tenants' names because mold problems typically affect a large portion of a building and that she was entitled to depose Weidner's president to find out if the employees she claimed failed to address mold problems were "doing their job as trained and instructed by management." In mid-May the superior court denied Punches's motion to compel and granted Weidner's motion for a protective order without explanation.

Punches filed her opposition to the partial summary judgment motion in late May and asked for an extension of time to file a "final" opposition to allow her to obtain a diagnosis and treatment plan for her ailments. Punches claimed that she had "overwhelming" evidence of mold exposure and that lay testimony about the presence of mold was "sufficient to prove" the cause of a respiratory illness. She also stated that she had recently obtained a primary care physician and was in the process of seeking a diagnosis. Weidner did not oppose the requested continuance, but stated it would oppose any future requests because Punches "has had two years to investigate the causation for her claimed medical conditions."

Punches filed a second opposition to the partial summary judgment motion in mid-June. She requested an additional three-week extension, contending that, in

addition to the reasons she had provided in her last request for an extension, she was having difficulty obtaining needed laboratory work due to her Medicaid insurance. Punches filed an affidavit ten days later, stating that she had always been a healthy person and her health deteriorated only after she moved into her apartment. She described the apartment's foul smell and clothes with a moldy odor. A few days later Punches filed a motion to continue the trial, based on the illness and unavailability of a building air-quality expert and delays in scheduling depositions of Weidner employees, which she stated had been caused by Weidner.

Weidner replied to Punches's second opposition to its summary judgment motion, arguing that Punches had been dilatory in discovery and that she had not offered adequate reasons to support her request for another extension. Weidner emphasized that Punches had more than two years to investigate the cause of her ailments but had not sought any treatment for over a year — from May 20, 2016 through September 13, 2017 — and that she had not provided any medical records to support her claims.

The superior court granted Punches's motion for continuance and scheduled a trial setting hearing in late July. When the parties were unable to agree on a trial date due to Punches's doctor appointments, the court continued the hearing until October 1.

In early August, Punches filed a third opposition to Weidner's summary judgment motion and asked for another continuance. Punches claimed that she had seen an ear, nose, and throat (ENT) specialist in Minnesota who had performed a nasal swab test. Punches noted that after the test result was negative for fungal material she had consulted with the doctor and he had suggested a further fungal mycotoxin test. She therefore requested more time to obtain such a test result, because "if there is a positive test sample . . . [Weidner's summary judgment motion] should be denied in full."

At the October trial setting conference, Punches requested a continuance to enable her to obtain affidavits from an expert witness she intended to call for trial.

The court granted Punches a one-week continuance under Alaska Civil Rule 56(f),[5] until October 8, to file a response to the summary judgment motion but emphasized that "it [was] the last extension [it would] grant, given the passage of time."

Punches filed her fourth opposition to summary judgment on October 9. In it she advised that she had obtained the result of the testing she had discussed with the Minnesota ENT specialist and that it had shown a high level of "Ochratoxin A" in her body. As a result, "lots of further diagnosis and treatment methods [we]re needed" before Punches would be able to "state her case for physical injury with the precision needed for trial." She requested that the court either deny summary judgment "without prejudice to refiling after further diagnosis is done" or, in the alternative, grant her another three-month continuance.

Weidner opposed, citing Punches's late filing of the opposition as well as her failure to file the lab report. Weidner argued that even if the court considered Punches's latest opposition to its motion to be new evidence, Punches had failed to show any connection between the level of ochratoxin and her claims.

## D. Superior Court Orders

The court denied Punches's request for a continuance and granted Weidner's motion for partial summary judgment in late November 2018. After recognizing that Rule 56(f) continuances are to be interpreted liberally "to allow a litigant a meaningful opportunity to obtain evidence to present a case,"[6] the court noted that "pure speculation cannot support a fishing expedition for evidence to oppose

---

[5] *See* Alaska R. Civ. P. 56(f) (authorizing court to continue proceedings to obtain affidavits in response to summary judgment motion).

[6] *Miller v. Treadwell*, 245 P.3d 867, 876 (Alaska 2010).

summary judgment."[7] Concluding that Punches "would have this case on hold indefinitely" until she could get an expert to support her theory that "(1) [she] ha[d] injuries, (2) those injuries were caused by mold exposure, and (3) that mold in [her] apartment caused those injuries," and considering the number of continuances Punches had already been granted, the court concluded that another Rule 56(f) continuance was unlikely to "result in evidence creating a genuine issue of material fact."

After denying Punches's requested continuance the court granted partial summary judgment for Weidner on the personal injury claim, noting that even by "[d]rawing all reasonable inferences in favor of [Punches] there is no evidence in the record that her injuries were caused by mold exposure at all, let alone mold exposure from her apartment." The court explained that there was "no reasonably apparent causal relationship between smelling a foul odor and respiratory illness or infection" and that it would not "speculate as to the various causes of respiratory infection as the pathology of that affliction is within the expertise of the medical field."

The court convened a scheduling conference on January 15, 2019 and set trial for February 4. The next day Punches filed a fifth opposition to the granted motion for partial summary judgment, "perfecting the record for appeal." She stated that test results from an appointment with another specialist a few days earlier had revealed an unusually "high . . . presence of gasoline nodules in her physiology." She included a second affidavit, reaffirming her belief that mold in her apartment had caused her health issues. She detailed her problems obtaining health insurance, which had prevented her from "vigorously" pursuing diagnosis and treatment. Punches also filed her designation of expert, naming the specialist and providing his contact information.

---

[7]     *Id.*

Weidner filed a motion in limine a few days later asking the court to preclude any evidence or testimony about a building fire, a gasoline spill or smell, or "harmful mold inhalants" rendering Punches's apartment uninhabitable. Weidner argued that Punches had not offered any evidence that there were harmful mold inhalants in her apartment; that a fire in the building had affected her apartment; or that she had ever complained of gasoline smells in the apartment.

Punches opposed the motion in limine, arguing that evidence of mold in her apartment was plain: a "pungent, sour aroma of mold" that two witnesses could confirm. Punches argued that the fire and gasoline were relevant because traces were harmful to human health and could help explain the smell in the apartment. And she argued that there was no unfair prejudice by introducing "the history, appearance and physical condition" of the apartment. The next day Punches filed her sixth opposition to the granted partial summary judgment motion, describing new dietary restrictions recommended by the specialist she had seen most recently.

The court granted Weidner's motion in limine on January 29.

### E. Trial And Appeal

Before the beginning of the five-day jury trial on February 4, the court clarified its rationale for denying Punches's motion for a continuance and granting partial summary judgment. The court first noted that Punches had not offered a "clear timeline" regarding when she expected to be able to provide expert testimony in support of her claim that any of her injuries were the result of mold exposure in her apartment or "a result of mold exposure generally." The court explained that the additional information Punches had provided did not create a genuine issue of material fact regarding her claimed injuries, and that as a result, evidence relating to her claimed injuries was being

excluded because any probative value it might have was outweighed by its possible prejudicial effect.[8]

Punches proceeded to trial on the negligence and breach of contract claims. The jury returned verdicts in favor of Weidner, determining that Weidner was not negligent and had not breached its lease with Punches. The court entered judgment for Weidner and awarded attorney's fees and costs to Weidner as the prevailing party.

Punches appeals, arguing that the court improperly granted Weidner's motion for partial summary judgment. She also argues that it was an abuse of discretion to deny her motion to compel discovery; to grant Weidner's motion in limine; to prevent her from presenting her test results or evidence of physical symptoms; and to deny her Rule 56(f) request for continuance.

III.   STANDARD OF REVIEW

We review the superior court's rulings on discovery[9] and motions to compel discovery[10] for abuse of discretion. "We will find an abuse of discretion when the decision on review is manifestly unreasonable."[11]

---

[8]     *See* Alaska R. Evid. 403 ("[E]vidence may be excluded if its probative value is outweighed by danger of unfair prejudice, confusion of issues, or misleading jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.").

[9]     *Noffke v. Perez*, 178 P.3d 1141, 1144 (Alaska 2008).

[10]     *Douglas Indian Ass'n v. Central Council of Tlingit & Haida Indian Tribes of Alaska*, 403 P.3d 1172, 1176 (Alaska 2017) (quoting *Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (Alaska 1999)).

[11]     *Sykes v. Lawless*, 474 P.3d 636, 646 (Alaska 2020) (quoting *Erica G. v. Taylor Taxi, Inc.*, 357 P.3d 783, 786-87 (Alaska 2015)).

We review a denial of a motion to continue, including one premised on Rule 56(f),[12] for "abuse of discretion, 'determining whether a party has been deprived of a substantial right or seriously prejudiced by the superior court's ruling.' "[13] In doing so, we "consider 'the particular facts and circumstances of each individual case to determine whether the denial was so unreasonable or so prejudicial as to amount to an abuse of discretion.' "[14]

"We review a grant of summary judgment de novo."[15] "Summary judgment is proper if there is no genuine factual dispute and the moving party is entitled to judgment as a matter of law."[16] "When ruling on a summary judgment motion, we view the facts in the light most favorable to the non-moving party."[17]

We review a trial court's Alaska Evidence Rule 403 ruling for abuse of discretion by "balancing the danger of unfair prejudice against the probative value of the evidence to determine whether the potential danger predominated so greatly as to leave us firmly convinced that admitting the challenged evidence amounted to a clear abuse

---

[12]     *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 757 (Alaska 2008) (citing *Hymes v. DeRamus*, 119 P.3d 963, 965 (Alaska 2005)).

[13]     *Clementine F. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 375 P.3d 39, 43 (Alaska 2016) (quoting *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012)).

[14]     *Id.* (quoting *Rowan B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 361 P.3d 910, 912-13 (Alaska 2015)).

[15]     *Mitchell*, 193 P.3d at 757 (citing *Miller v. Safeway, Inc.*, 170 P.3d 655, 658 (Alaska 2007)).

[16]     *Id.*

[17]     *Dapo v. State*, 454 P.3d 171, 175 (Alaska 2019) (citing *Cabana v. Kenai Peninsula Borough*, 50 P.3d 798, 801 (Alaska 2002)).

of discretion."[18]  "We reverse only if 'the error affected the substantial rights of a party.' "[19]

## IV.    DISCUSSION

### A.    The Superior Court Did Not Abuse Its Discretion By Denying Punches's Motion To Compel Discovery And Granting Weidner's Protective Order.

Punches argues that the superior court erred when it denied her motion to require Weidner's principal, Dean Weidner, to be deposed and to compel discovery of other tenants' contact information.  We conclude that the superior court did not abuse its discretion when it denied Punches's motion to compel and granted Weidner's protective order.

### 1.    The burden of deposing Dean Weidner would have outweighed the benefit to Punches.

Punches argues that the superior court should have granted her motion to compel the deposition of Dean Weidner.  Punches argues that the superior court had "no authority at all under [Alaska Civil Rule 26(b)(2)(A)] to forbid" his deposition.[20] Punches asserts that his deposition would have revealed "lots of information about the apartment condition, the repairs post-lease, and the company history, policies and practices in connection with mold and fire cleanup."

---

[18]    *Ray v. Draeger*, 353 P.3d 806, 810 (Alaska 2015) (quoting *Conley v. Alaska Commc'ns Sys.*, 323 P.3d 1131, 1136 n.11 (Alaska 2014)).

[19]    *Id.* (quoting *Kingery v. Barrett*, 249 P.3d 275, 281 (Alaska 2011)).

[20]    Alaska R. Civ. P. 26(b)(2)(A) (establishing when and to what extent court may limit discovery, including depositions).

In *Gibson v. GEICO* we affirmed the superior court's protective order prohibiting Gibson from deposing two GEICO insurance claims adjustors.[21] GEICO argued that the adjustors' evaluation of the amount of damages that Gibson had suffered from the accident did not mean they had any knowledge about any injuries Gibson claimed to have suffered in it.[22] Gibson conceded that the only issue of fact for trial was the extent of damages she had suffered.[23] The superior court granted the motion, concluding that the adjustors' knowledge was not relevant to the only issue of fact.[24] We upheld the superior court's order, noting that even if the adjusters' depositions might have led to relevant evidence, that evidence "was obtainable from other sources and . . . was likely to be tangential to the issue of damages."[25] We held that because the burden of requiring the adjustors' depositions "outweighed its likely benefit," the superior court had not abused its discretion when it granted the protective order.[26]

Dean Weidner, the "sole owner and manager" of the parent company that owned and managed the apartment complex, is further removed from the facts at issue here than were the claims adjustors in *Gibson*. Because Punches was able to depose the individuals actually responsible for the maintenance of her apartment, the superior court could reasonably conclude that the chance the deposition would reveal relevant evidence was outweighed by the burden imposed on Weidner by a deposition. The superior court

---

[21]    153 P.3d 312, 321 (Alaska 2007).

[22]    *Id.* at 316.

[23]    *Id.*

[24]    *Id.* at 317.

[25]    *Id.*

[26]    *Id.*

did not abuse its discretion by denying Punches's motion to compel the deposition of Dean Weidner.[27]

> ### 2. Punches failed to make a prima facie case relating other tenants' information to her claims.

Punches argues that the superior court erred when it denied her motion to compel the production of information about other tenants of her building. She contends that other tenants would have valuable information relating to her claims because mold and fire damage affect an entire building. She also argues that other apartments also would have needed repairs stemming from the same conditions she claims existed in her apartment, including excessive dampness, a fire in the building, and Weidner's negligence in making repairs.[28]

Punches argues that Alaska Civil Rule 26(b)(1)[29] and Alaska Evidence Rule 401[30] set out a "liberal standard of what information is discoverable," and that because

---

[27] Weidner also argues on appeal that Punches had "an illegitimate reason" for seeking to depose Dean Weidner — to harass the company. But Weidner did not raise this argument to the superior court. It is therefore waived and we will not consider it. *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 355 (Alaska 2001) ("As a general rule, we will not consider arguments for the first time on appeal.").

[28] Punches does not respond to Weidner's argument that she failed to act in good faith when she filed the motion to compel.

[29] Alaska R. Civ. P. 26(b)(1) (parties may obtain discovery regarding any nonprivileged matter relevant to subject matter of litigation and information need not be admissible as long as it appears reasonably calculated to lead to admissible evidence).

[30] Alaska R. Evid. 401 ("Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.").

information about other tenants is not privileged and does not "present [an] element of unfair bias" she should have been allowed to obtain it.

After arguing that Punches did not act in good faith[31] because she did not attempt to confer with it before filing a motion to compel or provide it sufficient time to respond, Weidner points out that it provided Punches contact information of tenants who had lived in her apartment. Weidner argues that her request for other tenants' information was not relevant to her claims, which were specific to her apartment. Weidner argues that even if another tenant could testify that Weidner had been negligent in repairing a different apartment, "one act of negligence is not evidence of another." Weidner also argues that an "underlying issue of non-party privacy" required the superior court to balance Punches's right to discovery against the other tenants' expectation that their personal information would not be disclosed.[32]

We review the superior court's denial of Punches's motion to compel for abuse of discretion.[33] We turn first to Weidner's claim that the court was required to deny Punches's motion to compel other tenants' information, which overlooks *Ayuluk v. Red Oaks Assisted Living, Inc.*[34] There we held that the court had abused its discretion when it excluded evidence that was admissible to demonstrate an assisted living home's knowledge that an employee had previously behaved in ways that endangered

---

[31]     *See* Alaska R. Civ. P. 37(a)(2)(B) (requiring movant to have made "good faith effort to obtain discovery request information without court intervention").

[32]     *See State v. Doe*, 378 P.3d 704, 705-07 (Alaska 2016) (requiring court to balance expectation of privacy against other compelling interests).

[33]     *Noffke v. Perez*, 178 P.3d 1141, 1144 (Alaska 2008).

[34]     201 P.3d 1183 (Alaska 2009).

residents.[35]  Punches could have made similar use of other tenants' contact information to find evidence of other tenants' experience with mold and fire damage in the same building.

Weidner's argument about other tenants' privacy rights supports the superior court.  In *Doe* we cautioned that despite our liberal discovery policy courts must still "ensure that intrusions into [non-party] privacy are supported by sufficient justifications."[36]  We required the court to first consider whether the party seeking protection had a legitimate expectation that the information would not be disclosed and whether disclosure was nonetheless required by a compelling interest.[37]  If so, we required the court to ensure that the necessary disclosure would occur in the manner that intruded least into that expectation of privacy.[38]

The parties do not dispute that other tenants have an expectation of privacy in their contact information.  And Punches has some right to discover evidence that is reasonably calculated to lead to admissible evidence supporting her claims against Weidner.[39]  Previous tenants may possess evidence relating to Punches's claim that Weidner was negligent in repairing the problems she raises in her complaint.  Providing Punches their contact information would enable her to discover whether they do.

---

[35]    *Id.* at 1193-94.

[36]    378 P.3d at 706.

[37]    *Id.*

[38]    *Id.*

[39]    *See* Alaska R. Civ. P 26(b)(1) (parties may obtain discovery regarding any nonprivileged matter relevant to subject matter of litigation and information need not be admissible as long as it appears reasonably calculated to lead to admissible evidence).

But Punches had not been able to link the alleged mold in her apartment to her injury in the almost two years the case had been pending. Even if she had been able to contact other tenants who had similar issues with their apartments, this information would not have helped her demonstrate that the conditions in the building caused her injury. Because the information she might have received from the other tenants would not have meaningfully advanced her case, the court could reasonably conclude that she did not have a compelling interest justifying invading the privacy of other tenants in her building.[40] The court did not abuse its discretion when it denied Punches's motion to compel discovery of other tenants' information.

The court likewise did not abuse its discretion when it granted Weidner's cross-motion for a protective order requiring Punches to make a prima facie case that she had suffered personal injury before allowing her to conduct additional discovery. "The superior court has broad discretion to determine the scope and extent of discovery and to craft protective orders."[41] Punches had almost two years to obtain discovery and collect evidence supporting her allegations. The court did not abuse its discretion by precluding further discovery until Punches was able to establish a prima facie case of personal injury. We therefore affirm the superior court's order denying Punches's motion to compel and granting Weidner's cross-motion for a protective order.

**B.    The Superior Court Did Not Abuse Its Discretion By Denying Punches's Request For A Rule 56(f) Continuance.**

Punches argues that the superior court should have granted her fourth request for a Rule 56(f) continuance, giving her an additional three months to obtain affidavits in opposition to Weidner's motion for partial summary judgment. First, she

---

[40]    *Doe*, 378 P.3d at 706.

[41]    *DeNardo v. Bax*, 147 P.3d 672, 676 (Alaska 2006).

argues that a party "need only 'provide a reason why [a continuance] is needed and not be dilatory in discovery' " to be granted more time, citing *Mitchell v. Teck Cominco Alaska Inc.*[42] In *Mitchell* we described the necessary steps to obtain a continuance under Rule 56(f):

> [A] party (1) must unambiguously request relief on Rule 56(f) grounds, although Rule 56(f) itself need not be specifically mentioned; (2) must not have been dilatory during discovery; and (3) must provide adequate reasons why additional time is needed.[43]

Punches argues that she met these requirements. Punches asserts that she had received laboratory test results on the day her opposition was due, and that the results indicated that a "mold metabolite [was] found in [her] system." Punches argues that the superior court failed to take "this development" into account when it denied her requested continuance.

Punches argues that she was not dilatory and attributes her delay in making a prima facie case to the fact that "[f]or a period of six-months prior to filing the suit she was without medical coverage of any kind, making non-emergency medical care entirely unavailable to her." She asserts that during the "16 months this suit was pending," she consulted with a number of medical providers, including her primary care doctor, an infectious disease specialist, an allergist, and an ENT specialist. And she points out that she arranged a consultation with a specialist while the summary judgment motion was pending.

In response, Weidner argues that Punches had nearly 18 months and 3 continuances from the time she filed her suit until the partial summary judgment was

---

[42] 193 P.3d 751 (Alaska 2008).

[43] *Id.* at 758 (citing *Hymes v. DeRamus*, 119 P.3d 963, 965 (Alaska 2005)).

granted to support her case with admissible evidence but failed to do so. Weidner argues that the lab reports offered were not sufficient "to establish a genuine issue of material fact" because they were "highly ambiguous . . . [and] did nothing to prove causation or even diagnosis."

In denying Punches's request, the superior court acknowledged that during the nearly 18 months since filing her complaint, Punches had met with six medical providers and had laboratory testing completed. Yet the superior court noted Punches was "no closer in her attempt to find a diagnosis of her injuries that could subject [Weidner] to liability." The court found that "Punches does not have a diagnosis of any of her ailments being caused by mold exposure, let alone caused by mold in the apartment leased to her by [Weidner]." The court also pointed out that Punches had filed lab reports without any supporting statement from a medical professional, leaving the court without any basis to assess the lab reports.

As the superior court recognized, Punches's case differs from *Mitchell*. Mitchell's opposition had explicitly requested more time and cited Rule 56(f).[44] He had also not been dilatory with discovery; the case was less than six months old when the motion to dismiss was converted to a motion for summary judgment, and discovery was not set to close until a month after the court granted the motion.[45] Finally, Mitchell provided adequate reasons why he needed additional time.[46] Mitchell had already taken nine depositions and provided the court additional evidence supporting his claim, as well

---

[44] *Id.* at 758.

[45] *Id.* at 758-59.

[46] *Id.* at 759.

-as descriptions of more information he sought to discover.[47]  As a result, we concluded that Mitchell had satisfied the three requirements for obtaining a Rule 56(f) continuance.[48]

In contrast to *Mitchell*, Weidner filed its motion for partial summary judgment 11 months after Punches filed her complaint.  Another seven months passed before the superior court granted it, giving Punches some 18 months to make a prima facie showing that a genuine issue of material fact existed with respect to her personal injury claim.

And unlike Mitchell, who had conducted numerous depositions and obtained evidence supporting his claim, at the close of discovery Punches still had not obtained an expert "to testify that (1) [she] had injuries, (2) those injuries were caused by mold exposure, and (3) . . . mold in [her] apartment caused those injuries."

We have explained that the purpose of Rule 56(f) is to "safeguard against premature grants of summary judgment."[49]  But we have repeatedly held that Rule 56(f) continuances should not be granted to support "speculation."[50]  Coming 18 months after Punches filed her complaint, following three previously granted continuances, and in light of her failure to obtain any evidence during that time to support her personal injury

---

[47]    *Id.*

[48]    *Id.* at 758.

[49]    *Gamble v. Northstore P'ship*, 907 P.2d 477, 485 (Alaska 1995).

[50]    *See Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1260 (Alaska 2001) (holding that "[m]ere speculation that [the University of Alaska] withheld additional responsive documents does not warrant Rule 56(f) relief"); *see also Miller v. Treadwell*, 245 P.3d 867, 876 (Alaska 2010) (holding that "pure speculation cannot support a fishing expedition for evidence to oppose summary judgment").

claim, the superior court did not abuse its discretion when it denied Punches's fourth request for a Rule 56(f) continuance.

## C. The Superior Court Did Not Err By Granting Partial Summary Judgment.

A party moving for summary judgment "is entitled to judgment as a matter of law" when "there is no genuine issue as to any material fact."[51] In *Christensen v. Alaska Sales & Service, Inc.* we clarified what is meant by "any material fact" and thus when summary judgment is appropriate.[52] We held that "there are two important aspects to this requirement": (1) the "material fact is one upon which resolution of an issue turns" and (2) "the existence of a dispute over a material fact" is determined using a "reasonableness standard."[53] We explained that "the evidence proposed for trial must not be based entirely on 'unsupported assumptions and speculation' and must not be 'too incredible to be believed by reasonable minds.' "[54]

We further clarified that "[a]fter the court makes reasonable inferences in favor of the non-moving party, summary judgment is appropriate only when no reasonable person could discern a genuine factual dispute on a material issue."[55] This is a "lenient standard"[56] that "preserv[es] the right to have factual questions resolved by

---

[51] Alaska R. Civ. P. 56(c).

[52] 335 P.3d 514, 517-21 (Alaska 2014).

[53] *Id.* at 519.

[54] *Id.* at 520 (first quoting *Peterson v. State, Dep't of Nat. Res.*, 236 P.3d 355, 367 (Alaska 2010); then quoting *Wilson v. Pollet*, 416 P.2d 381, 384 (Alaska 1966)).

[55] *Id.* (first citing *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 696 (Alaska 2014); then citing *Yurioff v. Am. Honda Motor Co.*, 803 P.2d 386, 389 (Alaska 1990)).

[56] *Id.* (quoting *Shaffer v. Bellows*, 260 P.3d 1064, 1069 (Alaska 2011)).

a trier of fact only after following the procedures of a trial."[57] When we apply this lenient standard "we view the facts in the light most favorable to the non-moving party."[58]

Punches argues that the superior court erred when it granted partial summary judgment on her personal injury claim. She first contends that it was inappropriate because she should have been granted another continuance to obtain affidavits to support her opposition. But we have already determined that the superior court properly denied her request for an additional continuance.

Punches's second argument is that she demonstrated a "plain connection" between exposure to mold and a "compensable injury, even without presenting supporting medical testimony on causation." But Punches overlooks the law with regard to proving the causation of health problems. Although the standard to withstand a motion for summary judgment is lenient, our precedent — as Weidner correctly points out — requires expert testimony "when the nature or character of a person's injuries require[s] the special skill of an expert to help present the evidence to the trier of fact in a comprehensible format."[59] In *Choi* we determined that expert testimony was not required to establish injuries that are "of a common nature and arise from a readily identifiable cause."[60] We considered injuries such as back, neck, and arm pain stemming

---

[57] *Id.* at 521.

[58] *Dapo v. State*, 454 P.3d 171, 175 (Alaska 2019) (citing *Cabana v. Kenai Peninsula Borough*, 50 P.3d 798, 801 (Alaska 2002)).

[59] *Choi v. Anvil*, 32 P.3d 1, 3 (Alaska 2001).

[60] *Id.* at 4.

from an auto accident[61] and concluded that these injuries arose from "a situation easily understood . . . using everyday experience."[62]

Punches's injury, however, by her own admission requires a diagnosis that "is a very difficult one to reach." In fact, Punches cites a study where it took medical professionals nearly 20 years to diagnose a mold-related illness. Punches's alleged injury cannot be easily understood "using everyday experience."[63] Even assuming there had been mold in the apartment, Punches failed to obtain expert testimony to establish a connection between mold exposure and her alleged injuries including mucormycosis, a respiratory infection, bouts of skin abscesses, and chronic fatigue.

Without some proof beyond her personal belief that her ailments were caused by conditions in her apartment, Punches has not shown that a genuine issue of fact exists that precludes summary judgment. After reviewing the facts in the light most favorable to Punches, we agree with the superior court that Punches failed to demonstrate a genuine issue of material fact whether she suffered injury based on her exposure to mold in her apartment; we affirm the superior court's decision to grant partial summary judgment.

### D. The Superior Court Did Not Abuse Its Discretion By Granting Weidner's Motion In Limine.

After the court granted its motion for partial summary judgment, Weidner filed a motion in limine to preclude Punches from presenting evidence about "alleged effects from a building fire, gasoline 'spill,' and/or 'harmful mold inhalants.' " Weidner stressed that Punches "has no evidence" to support her theory that she suffered injury

---

[61] *Id.* at 2-4.

[62] *Id.* at 4.

[63] *Id.*

from such events or materials. Punches argued that the motion should be denied, asserting that mold was "[s]omething [m]ost [p]eople [a]re [a]ble to [i]dentify" and that "[t]here could be nothing unfairly prejudicial . . . in bringing truthful facts out at the trial."

The superior court granted Weidner's motion in limine without comment. Punches argues that the court abused its discretion and characterizes the order as one limiting "the scope of testimony about illness by Punches and the occurrence of the building fire." She claims that "[t]he error made by the superior court . . . could not be more manifest" and argues that its impact was "far beyond what [was] sought by any party." Punches concedes, however, that the order was consistent with the court's grant of partial summary judgment dismissing her personal injury claim.

Weidner argues that Punches never presented any evidence beyond her own beliefs about her health issues and their causes and that if the superior court erred by granting the motion in limine, any error was harmless.

Weidner filed, and the superior court granted, its motion in limine a few days before trial. At a conference before the start of trial on February 4, the court explained the basis for its order. The court advised the parties that it had "specifically . . . look[ed] at Evidence Rule 403," which authorizes the exclusion of evidence if its prejudicial impact outweighs its relevance.[64] The court then stated its "concern," noting that "because [it had] granted summary judgment as to those physical injury claims, . . . should testimony regarding those physical injuries be brought before the jury,

---

[64]     Alaska R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

then [the parties would] end up having mini trials regarding Ms. Punches's physical injuries and the limitation of the presentation of evidence to the jury."

The superior court correctly recognized that decisions about the admission and exclusion of evidence are governed by Evidence Rule 403, which requires the court to balance the probative value of proffered evidence against its potential prejudice. That is exactly what the superior court did. Having granted summary judgment removing Punches's personal injury claim from the jury's consideration, the court also kept evidence relating solely to that claim from the jury. A five-day trial proceeded on Punches's remaining claims, and Punches does not separately raise any challenge to restrictions placed on her ability to introduce evidence relating to those claims.

Given its broad discretion on evidentiary issues, and the grant of summary judgment on Punches's personal injury claim, the superior court did not abuse its discretion when it granted Weidner's motion in limine.

## V.   CONCLUSION

We AFFIRM the superior court's decision in all respects.