NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JESSIE C. RICE, | ) |
| | ) Supreme Court No. S-19269 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-11-11858 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| ALFRED KOOKESH, | ) AND JUDGMENT* |
| | ) |
| Appellee. | ) No. 2144 – April 29, 2026 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Jessie C. Rice, pro se, Anchorage, Appellant. Lindsey N. Dupuis, Law Offices of Lindsey N. Dupuis, LLC, Anchorage, for Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I.  INTRODUCTION

Separated parents with joint legal custody of their daughter could not agree on which middle school she should attend. The father filed a motion requesting that he be awarded sole legal custody with regard to school choice. He also moved for child support to be modified, citing his belief that the mother's income had increased

---

\*       Entered under Alaska Appellate Rule 214.

since the court last calculated support. The superior court ultimately granted both motions.

The mother appeals, arguing that the court abused its discretion in granting sole legal custody regarding school choice to the father and in denying her motion to compel the father's 2023 tax return for the purposes of calculating support. We affirm the superior court's custody modification. But we vacate the court's child support order, which was issued without the benefit of the tax return the mother sought to compel, and remand for further proceedings related to child support.

## II. FACTS AND PROCEEDINGS

### A. Background Facts

Jessie Rice and Alfred Kookesh have a daughter together and have litigated child custody issues since shortly after she was born. Before the court awarded exclusive school choice decision-making authority to Kookesh, the parties shared physical and legal custody. Their daughter attended elementary school near Rice's home in Anchorage from kindergarten to fifth grade. In July 2023, the summer before the child's sixth-grade year, Kookesh filed a motion requesting exclusive decision-making authority as to school choice, seeking to move the child from her elementary school (which enrolled students in kindergarten through sixth grade) to a particular middle school (which enrolled students in sixth through eighth grade). The superior court denied Kookesh's request.

After the child finished elementary school in the spring of 2024, Rice enrolled her in Rice's chosen middle school for the 2024-25 school year. Kookesh disagreed with this decision, and in August 2024 filed another motion requesting that he be awarded exclusive decision-making authority regarding school choice. He also filed a motion to modify Rice's child support obligation.

Kookesh argued that the child's graduation from elementary school and entrance into middle school, plus Rice's inability to effectively communicate her thoughts on what school the child should attend, gave rise to a substantial change in

circumstances that justified custody modification.  Meanwhile, he based his motion to modify child support on his belief that Rice's income had increased since the court's last support order was issued in 2021.  Kookesh provided the required Child Support Guidelines Affidavit.[1]  He had checked the box on the form which indicated that he had "attached a copy of [his] *most recent tax return* and 3 pay stubs to verify this information." (Emphasis added.)  He also requested that the court order Rice to file her own Child Support Guidelines Affidavit and provide her "2023 tax returns," all supporting tax forms, all 2023 W-2s, and three recent pay stubs.

Rice opposed Kookesh's motions, arguing there was no substantial change in circumstances and that Kookesh's filing of a motion seeking disclosure of her income information "prior to even furnishing his own" was "premature."   Rice's motion indicated that she had received Kookesh's Child Support Guidelines Affidavit, but not his supporting documentation.

Recognizing the time-sensitive nature of the parties' disagreement about their daughter's school, the court scheduled a September evidentiary hearing on Kookesh's motion to modify custody.[2]  The court also granted Rice's request that the child be interviewed regarding school preference.

### B.    Evidentiary Hearing

At the evidentiary hearing, Kookesh testified that the child had just started seventh grade at Rice's preferred middle school.   He testified  that  his  overall

---

[1]    A DR-305 Child Support Guidelines Affidavit is a form provided by the Alaska Court System which guides parents through the formula for calculating support under Alaska Civil Rule 90.3.  *See* DR-305 (6/25), CHILD SUPPORT GUIDELINES AFFIDAVIT,  https://public.courts.alaska.gov/web/forms/docs/dr-305.pdf  (last  visited January 30, 2026).

[2]    The order setting the evidentiary hearing referenced the court's October 2022 custody order, in which the court awarded sole legal custody and primary physical custody to Kookesh in the event that Rice moved.  Rice never relocated, though, and the parties continued to share legal and physical custody until the court's decision at issue on appeal.

communication with Rice was poor, that Rice refused to compromise with him, and that he was essentially forced to file motions with the court in order to address any major decisions regarding their daughter's care.

Kookesh testified that the child had been at her current school for about a month and that he had recently received an email indicating that she was receiving "Ds" and "Fs" in her classes. Kookesh testified that he logged into ParentConnect[3] and confirmed the poor grades. He indicated that her academic performance previously had been "outstanding" while attending elementary school.

Kookesh testified that he had an older son who went to a different middle school — one he preferred — and that the previous spring he and the child had toured both his and Rice's preferred schools. Kookesh testified that he had invited Rice to the tours, but that Rice did not respond to his invitation. Kookesh stated that if the child went to his preferred middle school, she would be able to attend a before-school tutoring program that could offer assistance with academic work and grade tracking.

Rice was not represented by an attorney at the hearing, so the court questioned Rice. The court asked Rice why she was best suited to make decisions regarding school choice. Rice responded that the child was successful at her current school, that her grades had improved since Kookesh checked them, that the child had attended school in the same school zone throughout her education, and that pulling her out of her current school after the year had already started would be "disruptive and not in her best interest."

The court asked Rice about the tutoring program that Kookesh had mentioned and whether she thought the program could be beneficial. Rice said she did not think it would be any better than "receiving assistance from [the child's] older siblings." Rice also testified that Kookesh never tried to communicate with her about

_____

        **3**        ParentConnect is the online platform that Rice and Kookesh use to check their daughter's grades.

the school change issue before filing a motion. The court asked Rice whether, if Kookesh had asked her, she would have agreed to send the child to his preferred middle school, to which Rice replied "[N]o, but it would've been helpful to have communication to understand each other's perspective and work towards a resolution before going to court." The court also asked Rice what she would do if the child stated that she wanted to attend Kookesh's preferred middle school, and Rice responded that she would then agree that the child should attend that school.

A parenting plan facilitator interviewed the child a week after the evidentiary hearing. During the interview, the child said that she enjoyed her current school and that it was "a little annoying" that her dad was trying to send her to a different school against her wishes. She stated that she had many friends at her current school and that she had good classes and liked her teachers. The parenting plan facilitator indicated that the child "presented as thoughtful and direct" and recommended that her preference carry weight.

### C. Superior Court Custody Order

The superior court issued an order in October 2024 granting Kookesh's motion for sole legal custody regarding school choice. The court observed that Kookesh and Rice had a "high conflict" relationship, as evidenced by seven volumes of pleadings that had been filed by the parties since their daughter was born. The court further found that Kookesh and Rice "clearly lack[ed] the ability to communicate effectively and resolve this issue." It found that there was a substantial change in circumstances because the child was "transitioning to middle school" and was "showing signs of struggling academically" at her current school. The court found that the child had historically "shown outstanding scholastic achievement" but that she had been struggling since starting at her current school, as evidenced by her failing grades.

The court noted that Kookesh had "prior experience" with his preferred middle school because he had an older son who had attended the school and "performed well academically." The court found that Kookesh had toured both parents' preferred

schools with the child, and that he had "familiarized himself" with the before-school program that would provide tutoring services and help to track the child's grades if she went to his preferred school.

The court also found that Rice did "not have a concrete plan to assist [the child] with her current academic difficulties." The court noted that Rice had proposed having her older children provide tutoring, but that Rice had not shown that her children had the "availability [or] capacity" to do so.

The court found that Kookesh, on the other hand, had "conducted a very reasonable and thorough investigation of the two schools and ha[d] legitimate reasons for preferring" the middle school he proposed, and that the before-school tutoring program offered "important potential benefit to [the child]." The court also observed that at the time, the child had to spend two hours each day commuting between home and school by bus during Kookesh's custodial periods due to Kookesh's inability to drive her.

The court acknowledged the child's preference for staying at her current school, but noted several reasons for giving her preference less weight. First, the court found that at 12 years of age, the child remained "quite young." The court also inferred that her statements during the preference interview may have been "substantially influenced" by Rice. Finally, the court noted that while the child was concerned about the "potential loss of friends," Kookesh's long-term concern for her academic success carried "greater weight."

Based upon those findings, the court determined that there had been a substantial change in circumstances and granted sole decision-making authority regarding school choice to Kookesh.

### D. Rice's Motion To Compel And Superior Court's Order On Support

Shortly after the court modified custody, Kookesh filed an objection to Rice's proposed child support calculation, arguing that she should not be allowed to claim certain deductions and that she omitted certain aspects of her income. Kookesh

also provided his own proposed child support calculation suggesting that Rice was obligated to pay him $268.66 per month in child support. In response, Rice filed motion work containing a variety of requests. Included was a request that the court compel Kookesh to produce his 2023 tax return. Rice maintained that Kookesh's tax return would prove he was misrepresenting his income on his child support forms.

Before Rice's motion to compel was fully briefed, the superior court issued an order modifying Rice's monthly child support obligation as requested by Kookesh. Rice moved to reconsider that order, arguing once again that the court should compel Kookesh to provide his 2023 tax return and that the return would demonstrate Kookesh had additional income, which would impact the court's support calculation. The court thereafter denied Rice's motion to compel by signing Kookesh's proposed order without providing any written findings. And the court denied Rice's motion for reconsideration of the court's modification of child support.

Rice appeals.

## III. STANDARD OF REVIEW

We review a superior court's custody modification decision "deferentially."[4] We will only reverse a superior court's decision to modify custody, including its decision that there has been a substantial change in circumstances, if the court "abused its discretion" or where its "controlling findings of fact were clearly erroneous."[5] A court abuses its discretion in this context when it considers "improper factors," fails to "consider statutorily mandated factors," or assigns "disproportionate weight to particular factors while ignoring others."[6]

We also review "the superior court's rulings on discovery and motions to

---

[4]     *Rainer v. Poole*, 510 P.3d 476, 481 (Alaska 2022).

[5]     *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (quoting *McClane v. Paul*, 189 P.3d 1039, 1042 (Alaska 2008)).

[6]     *Id.* (quoting *Chesser-Witmer v. Chesser*, 117 P.3d 711, 715 (Alaska 2005)).

compel discovery for abuse of discretion."[7]   We find an abuse of discretion in discovery-related rulings "when the decision on review is manifestly unreasonable."[8]

We review a superior court's factual findings for clear error.[9]  A court's factual findings are clearly erroneous if our "review of the record leaves us with the definite and firm conviction that the superior court has made a mistake."[10]

Finally, "[w]e review de novo the question of whether a judge appears biased, which is assessed under an objective standard."[11]

## IV.   DISCUSSION

### A.   The Superior Court Did Not Abuse Its Discretion By Awarding Sole Legal Custody Regarding School Choice To Kookesh.

Modifying a pre-existing legal custody order requires the superior court to engage in a two-step inquiry:   first, the court must find that the parent seeking modification has established a significant change in circumstances, and second, the court must find that modifying custody is in the child's best interests.[12]

#### 1.   The superior court did not abuse its discretion in finding that Rice and Kookesh's prolonged inability to decide where their child would attend school amounted to a substantial change in circumstances.

To determine whether a substantial change in circumstances has occurred, the superior court must "compare current circumstances to a 'baseline' at the time of

---

**7**      *Punches v. McCarrey Glen Apartments, LLC*, 480 P.3d 612, 619 (Alaska 2021) (internal citations omitted).

**8**      *Id.* (quoting *Sykes v. Lawless*, 474 P.3d 636, 646 (Alaska 2020)).

**9**      *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003).

**10**      *Collier*, 377 P.3d at 20 (quoting *William P. v. Taunya P.*, 258 P.3d 812, 814 (Alaska 2011)) (internal quotation marks omitted).

**11**      *Downs v. Downs*, 440 P.3d 294, 297 (Alaska 2019).

**12**      *Collier*, 377 P.3d at 20 (quoting *Hunter v. Conwell*, 219 P.3d 191, 196 (Alaska 2009)).

the most recent custody order."[13]  If "a number of circumstances are alleged to have changed, the court is required to consider them in the aggregate to determine whether they amount to a substantial change."[14]

Here, the superior court found that two primary circumstances in the aggregate amounted to a significant change justifying modification of legal custody. First, the court found that Rice and Kookesh were unable to communicate and reach a decision together about which middle school their daughter should attend.  The court found that this inability to communicate and make an important decision, coupled with the child's significant drop in academic performance since beginning at her then-current school, amounted to a significant change in circumstances since the time of the court's previous custody order.

Rice raises several arguments that the court erred in its reasoning.  First, she argues that "the natural, expected transition to middle school" is not a substantial change in circumstances.  But the court did not find that the child's transition to middle school in itself amounted to a substantial change; rather, it found that the parents' inability to communicate about and decide which middle school their daughter should attend was one change that, together with the child's poor academic performance, was substantial.

Rice next argues that the court clearly erred in finding that the child had had a sudden drop in academic performance because the court was relying on "temporary grades in [ParentConnect]."  She notes that she explained to the court that grades in ParentConnect "[were] not always up to date," and that relying on these grades before a report card came out "was premature, and not [a] basis to create a 'substantial change in circumstances.' "  She continues that Kookesh acted with "malintent" by

---

[13]     *Rainer v. Poole*, 510 P.3d 476, 482 (Alaska 2022) (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

[14]     *Collier*, 377 P.3d at 22.

pulling their daughter's grades "just a couple of weeks into the new school year" with a statement "showing less than perfect grades."

But the record here demonstrates that the superior court was aware that the grades reported in ParentConnect were only representative of the child's first few weeks of school and were subject to change. The court balanced this awareness against the evidence presented by both parties that their daughter had historically showed "outstanding scholastic achievement" but that she had recently started failing core subjects. The court could have placed less weight on the shift in the child's grades during the first few weeks of middle school. But it was not an abuse of discretion for the court to discern, from the parties' testimony and the child's ParentConnect grades, a shift in her academic performance and to consider that as one factor contributing to a substantial change in circumstances.[15]

Finally, Rice argues that the "court gave too much weight" to the fact that the child was commuting two hours per day to Rice's preferred middle school when residing with Kookesh. But we do not view the court's reference to those transportation issues as carrying much weight in its "significant change" analysis. The transportation issues were subject to lengthy discussion by both parties at the evidentiary hearing. At one point during the hearing, the court paused evidence to allow the parties time to try to resolve the issue themselves. However, after returning from recess, Kookesh informed the court that the parties had been unable to come to an agreement, and that the issue was "not even primarily about transportation" but about each parent's belief that "their particularly chosen school" was the right one for their daughter. Thus the information presented by the parties at the evidentiary hearing demonstrates that the transportation issue was merely one manifestation of Rice and Kookesh's inability to communicate and reach a decision together about the child's middle school.

---

[15]     *See id.* at 20 (quoting *Hunter*, 377 P.3d at 196).

While communication problems between parents generally do not amount to a substantial change if the problems have been "factored into the superior court's previous custody order,"[16] the parties' inability to communicate here regarding the child's middle school had not been factored into the court's most recent 2022 and 2023 custody orders. We thus see no abuse of discretion in the court's determination that there had been a substantial change in circumstances.

> **2.** **The superior court did not abuse its discretion in determining that awarding sole legal custody regarding school choice to Kookesh was in the child's best interests.**

If the superior court finds a substantial change in circumstances, it must analyze whether modifying legal custody is in the child's best interests.[17] The superior court's best interests analysis should be "based on 'the statutory factors enumerated in AS 25.24.150(c).' "[18]

---

[16] *Rainer*, 510 P.3d at 482.

[17] *Collier*, 377 P.3d at 20 (citing *Hunter*, 219 P.3d at 196).

[18] *Id.* (quoting *Heather W. v. Rudy R.*, 274 P.3d 478, 482-83 (Alaska 2012)). Alaska Statute 25.24.150(c) provides that:

> The court shall determine custody in accordance with the best interests of the child under AS 25.20.060–25.20.130. In determining the best interests of the child the court shall consider:
> (1) the physical, emotional, mental, religious, and social needs of the child;
> (2) the capability and desire of each parent to meet these needs;
> (3) the child's preference if the child is of sufficient age and capacity to form a preference;
> (4) the love and affection existing between the child and each parent;
> (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
> (6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the

As a preliminary matter, we note that the superior court appropriately focused its analysis on whether it was in the child's best interests to award decision-making authority regarding school choice to just one parent, and if so, which parent would best exercise that authority — as opposed to focusing on which school the child should attend. Rice raises two primary challenges to the court's best interests determination. Each challenge fails to demonstrate that the court abused its discretion.

First, Rice argues that the court failed to consider that the child was "accustomed to" her then-current school and that removing her suddenly "negatively impact[ed] her social needs." But although maintaining continuity for a child is one factor that courts should consider,[19] it is not the only factor.[20] Here, the superior court observed that Kookesh thoroughly researched the schools that the parties were interested in, as well as an additional tutoring program, and that the reasoning for his preference in schools was "tied directly to improving the outcome for [the child's] education." Additionally, the court appeared to credit Kookesh's testimony that, at least initially, he attempted to communicate with Rice about touring the involved schools

---

other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

[19] *See* AS 25.24.150(c)(5) (providing courts should consider "desirability of maintaining continuity").

[20] *See, e.g.*, AS 25.24.150(c)(1) (providing courts should consider "the physical, emotional, mental, religious, and social needs of the child").

and that Rice was unresponsive. Meanwhile the superior court found that Rice was "content with [her preferred school]" and that she did "not have a concrete plan to assist [the child] with her current academic difficulties." The court was within its discretion in crediting Kookesh's greater effort to consider the options available to the child, and to communicate regarding those options, in determining which parent should have legal custody as to school choice.[21]

Rice also contends that the court failed to give sufficient weight to the child's preference to remain at her then-current school.[22] Here, the superior court did give some weight to the child's preference, but ultimately concluded that that factor was not determinative. The court reasoned that the child was still "quite young" and that Kookesh's perspective on her long-term academic success should carry greater weight. The court was within its discretion to weigh these factors as it did.

We therefore conclude that the superior court was within its discretion in awarding sole decision-making authority regarding school choice to Kookesh.

## B. It Was An Abuse Of Discretion To Deny Rice's Motion To Compel Production Of Kookesh's 2023 Tax Return.

Alaska Civil Rule 90.3 governs child support awards. Civil Rule 90.3(e)(2) provides that where "there is an ongoing monthly support obligation," either parent, upon request by the other, must provide to the other parent "documentation of annual income and claimed deductions, *such as tax returns* . . . and documentation of any other current income sources not listed on the parent's prior year's *tax return*."[23] A parent may request this information from the other parent up to once per year.[24]

---

[21]    *See* AS 25.24.150(c)(2) (providing courts should consider "the capability and desire of each parent to meet" child's needs).

[22]    *See* AS 25.24.150(c)(3) (providing courts should consider "the child's preference").

[23]    Alaska R. Civ. P. 90.3(e)(2) (emphasis added).

[24]    *Id.*

Rice argues that the court erred when it denied her motion to compel discovery related to Kookesh's 2023 tax return. She asserts that without the tax return, she was unable to demonstrate that Kookesh's child support-related affidavits contained "unsubstantiated" tax deductions. Rice maintains that Kookesh is using a "piggy-banking tactic" to lower his net income but then get his "withholdings back upon tax return time." And she maintains that under Civil Rule 90.3, "[a] tax return is *required* to validate any allowable federal tax obligation to be counted as a deduction." (Emphasis added.)

We do not agree with Rice's argument that the court must, *in all circumstances*, have a tax return in order to verify a party's tax obligation. However, we conclude that the 2023 tax return Rice sought from Kookesh was relevant to the support issue before the court and that the information should have been disclosed to Rice before the court ruled on Kookesh's motion to modify child support.

First, we agree with Rice that Kookesh's 2023 tax return is not in the record. When Kookesh filed his motion to modify support in August 2024, he provided a Child Support Guidelines Affidavit and checked the box on the form which indicated that he had "attached a copy of [his] *most recent tax return* and 3 pay stubs to verify this information." (Emphasis added.) The tax return, however, is nowhere in the record.

Then, when Kookesh filed his renewed Child Support Guidelines Affidavit in October, he attached three of his paystubs, his Native corporation share distribution information, and his 2023 W-2. Again, Kookesh checked the box on his Child Support Guidelines Affidavit that indicated he had "attached a copy of [his] *most recent tax return* and 3 pay stubs." (Emphasis added.) While the record contains Kookesh's paystubs, it does not contain his tax return. We therefore accept Rice's contention that Kookesh never furnished his tax return to her.

Understanding that Kookesh did not produce his 2023 tax return, we must consider whether the failure to order Kookesh to do so upon Rice's request was an abuse

of discretion. Civil Rule 90.3(e)(2) explicitly states that a person's tax returns are a proper means of validating income and deductions, and Rice articulated a specific theory as to why Kookesh's tax returns were necessary to support a correct calculation. Further, Rice was required to disclose her own tax return to Kookesh and the court. We therefore conclude that it was an abuse of discretion to deny Rice's motion to compel Kookesh's tax return and that it was error to rule on Kookesh's motion to modify child support without disclosure of the relevant tax return.

### C. Rice's Argument That The Court Was Biased Is Unsupported By The Record.

Rice also argues that the superior court judge who presided over the case was biased. She contends that the judge's legal custody decision and its denial of her child-support-related motion work is evidence of improper bias.

Rice's claims of bias are rooted in the judge's decision of contested issues.[25] But a judge's adverse ruling in itself "does not establish evidence of bias."[26] To succeed on a claim of extrajudicial bias, a party "must show that the judge formed an opinion . . . from extrajudicial resources, resulting in an opinion other than on the merits."[27] Judicial bias can also arise "during the course of judicial proceedings if 'a judicial officer hears, learns, or does something intrajudicially so prejudicial that further participation would be unfair.' "[28] A party fails to establish a claim of judicial bias if

---

[25] We have repeatedly assumed without deciding that a party may raise the issue of judicial bias for the first time on appeal. *Downs v. Downs*, 440 P.3d 294, 299 & n.26 (Alaska 2019) (citing *Greenway v. Heathcott*, 294 P.3d 1056, 1063 (Alaska 2013)). We continue to rely on that assumption in the instant case.

[26] *Ronny M. v. Nanette H.*, 303 P.3d 392, 409 (Alaska 2013).

[27] *Id.* at 409 (quoting *Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011)).

[28] *Downs*, 440 P.3d at 300 (Alaska 2019) (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018)).

the judge's opinion is "based on the record, and the opinion is supported by the record."[29]

Here, Rice does not point to any specific facts in the record that demonstrate that the court formed an opinion about either parent's credibility or the merits of the contested issues based upon extrajudicial sources or improper factors. In accordance with its obligation to make credibility determinations at the evidentiary hearing,[30] the court appears to have found Kookesh's testimony to be more credible than Rice's. However, there is no indication that the court's determination and consequent weighing of the evidence were based on extrajudicial information or improper bias. Nor is there any indication in the record that the judge's decisions related to contested issues were based upon improper factors.

Rice's claim of judicial bias therefore fails.[31]

## V. CONCLUSION

We AFFIRM the superior court's modification of legal custody, and we REVERSE the court's denial of Rice's motion to compel Kookesh's 2023 tax return. We VACATE the court's order modifying child support and REMAND for further child-support-related proceedings consistent with this decision.

---

[29] *Ronny M.*, 303 P.3d at 409.

[30] *See Rausch v. Devine*, 80 P.3d 733, 741 (Alaska 2003) (clarifying that "[c]redibility determinations are the function of the trial court, not this court").

[31] Rice also argues that she was prejudiced by the court's scheduling of an evidentiary hearing on Kookesh's motion to modify custody in an "expedited" fashion. But the court did not set the hearing on any of the days Rice indicated she would be unavailable. Moreover, the issue posed by the parties' custody-related motion work was a time-sensitive one. It was therefore appropriate for the court to schedule the hearing in as timely a manner as possible.